**In re Jack JORDEN, M.D. et al., Relators.**

No. 06–0369.

Supreme Court of Texas.

Argued Sept. 26, 2007.

Decided March 28, 2008.

Don W. Kent, Ken W. Good, Kent Good Anderson & Bush, P.C., E. Glenn Thames Jr., Douglas R. McSwane Jr., Wade Nolan Hallisey, Potter Minton, P.C., Tyler, R. Brent Cooper, Diana L. Faust, Cooper & Scully, P.C., Kirsten M. Castaneda, Locke Liddell & Sapp LLP, Dallas, Mike A. Hatchell, Locke Lord Bissell & Liddell, LLP, Austin, Joel J. Steed, Russell H. Hill, Steed Flagg, L.L.P., Rockwall, Mike A. Hatchell, Austin, for Relators.

Christopher Allan, Pro Se for Real Party in Interest.

William H. "Bill" Liebbe, Law Offices of Bill Liebbe, Tyler, for Real Party in Interest.

Michael S. Hull, Hull Hendricks & Mac-Rae, L.L.P., Austin, Kenneth Charles Cunningham, Good Shepherd Health System, Longview, Joel Patrick Baker, The Baker Law Firm, P.L.L.C., Tyler, for Amicus Curiae.

Justice BRISTER delivered the opinion of the Court.

A Texas statute limits discovery in health-care lawsuits until the plaintiff serves an expert report summarizing how each defendant violated standards of care and caused the plaintiff injury. The issue here is whether that statute applies to presuit depositions authorized by Rule 202 of the Texas Rules of Civil Procedure. Because the statute prohibits "all discovery" other than three exceptions—and Rule 202 depositions are not listed among them—we hold the statute prohibits such depositions until after an expert report is served.

## I. Background & Jurisdiction

According to the petition filed here, Nancy Allan was taken to Mother Frances Hospital by ambulance complaining of chest pain. She was examined by Dr. Jack Jorden, who prescribed medicine for gastric reflux and referred her for an outpatient stress test. Three days later, she saw Dr. Donald Knarr with Tyler Cardiovascular Consultants, who prescribed a diuretic and scheduled her for a chest x-ray in a month. While trimming her trees at home nine days later, she suffered a fatal heart attack.

Her son, Dr. Christopher Allan, retained counsel and filed this petition individually and as her representative eighteen months later. As required by Rule 202,[1] Allan

---

1. *See* TEX.R. CIV. P. 202.2(f)(1) (requiring that if suit is anticipated, petitioner must "state

the names of the persons petitioner expects to have interests adverse to petitioner's in the

listed Drs. Jorden and Knarr, Tyler Cardiovascular, and Mother Frances Hospital as potentially adverse parties "in any future action," and requested leave to depose each of them. The trial court denied leave, holding that Rule 202 depositions are not allowed regarding health-care claims. The Twelfth Court of Appeals held otherwise and reversed, ordering the trial court to change its order within ten days.[2] The trial court complied, but the parties agreed to suspend the depositions pending the outcome of this mandamus proceeding.

■ Texas courts are split on whether presuit depositions may be taken regarding health-care claims—the Second and Twelfth Courts of Appeals allow them,[3] the Fifth, Eleventh and Fourteenth Courts of Appeals do not,[4] and the Sixth Court of Appeals allows them as to questions not targeted at a health-care provider.[5] This split alone does not invoke our conflicts jurisdiction, as that is generally limited to cases brought "from [an] appealable judgment of the trial courts."[6] Presuit deposition orders are appealable only if sought from someone against whom suit is *not* anticipated;[7] when sought from an anticipated defendant (as here), such orders have been considered ancillary to the subsequent suit, and thus neither final nor appealable.[8]

■ But conflicts like this are a factor we must consider in deciding whether mandamus is appropriate. The issue here is obviously recurring, and Texas courts are giving diametrically opposed answers.[9] Correcting whichever view is wrong after final judgment seems very unlikely, as it is hard to imagine how allowing discovery a little too early could ever be harmful error—either by causing rendition of an improper judgment or preventing the presentation of an appeal.[10] If (as relators claim) Texas law prohibits presuit depositions until an expert report is served, those depositions cannot be "untaken" and thus an appellate court will not be able to cure the error and enforce the statutory scheme

anticipated suit, and the addresses and telephone numbers for such persons . . .").

**2.** 191 S.W.3d 483, 489.

**3.** *See id.; In re Kiberu,* 237 S.W.3d 445, 449–50 (Tex.App.-Fort Worth 2007, orig. proceeding).

**4.** *See In re Clapp,* 241 S.W.3d 913, 918–19 (Tex.App.-Dallas 2007, orig. proceeding); *In re Raja,* 216 S.W.3d 404, 409 (Tex.App.-Eastland 2006, orig. proceeding); *In re Mem'l Hermann Hosp. Sys.,* 209 S.W.3d 835, 839–40 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding).

**5.** *See In re Temple,* 239 S.W.3d 885, 889–90 (Tex.App.-Texarkana 2007, orig. proceeding).

**6.** *See* TEX. GOV'T CODE § 22.001(a)(2) ("The supreme court has appellate jurisdiction . . . in the following cases when they have been brought to the courts of appeals from appealable judgment of the trial courts: . . . (2) a case in which one of the courts of appeals holds differently from a prior decision of another court of appeals. . . .").

**7.** *Ross Stores, Inc. v. Redken Labs., Inc.,* 810 S.W.2d 741, 742 (Tex.1991) (holding that presuit discovery order is final appeal when brought "against third parties against whom suits are not contemplated").

**8.** *Office Employees Int'l Union Local 277 v. Sw. Drug Corp.,* 391 S.W.2d 404, 406 (Tex. 1965) ("The taking of depositions to perpetuate testimony is ancillary to the anticipated suit.").

**9.** *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 136 (Tex.2004) ("Mandamus review of significant rulings in exceptional cases may be essential to . . . allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments. . . .").

**10.** *See* TEX.R.APP. P. 44.1(a).

after trial.[11] As a result, relators unquestionably may lose substantive and procedural rights if review is postponed,[12] rights the Legislature believed (as discussed below) are critical to ensuring access to affordable medical care in the state. In the unique circumstances presented here, we hold mandamus relief should be available if the relators can show a clear abuse of discretion.[13]

## II. The Health–Care Discovery Limitations

### A. Does § 74.351(s) Limit Rule 202 Depositions?

Since 1977, the Legislature has enacted a number of restrictions on health-care lawsuits to address a "crisis [that] has had a material adverse effect on the delivery of medical and health care in Texas." [14] To decrease costs associated with frivolous suits, expert reports are now required soon after filing as a means of separating meritorious claims from those that are frivolous or premature.[15] To limit costs until those reports are produced, the 2003 Texas Legislature enacted section 74.351(s) of the Civil Practice and Remedies Code placing strict limits on discovery:

Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

(2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and

(3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.[16]

Here, no expert report or curriculum vitae has been served. Accordingly, the plain terms of the statute stay "all discovery" but for the three listed exceptions. Although those exceptions include depositions of nonparties under Rule 205, they do not include presuit depositions governed by Rule 202. As the Legislature explicitly provided that this statute overrides any conflicting laws or rules of procedure, the statute's plain language appears to prohibit presuit depositions.[17]

11. *See Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992) ("First, a party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error."); *see also In re Dana Corp.,* 138 S.W.3d 298, 301 (Tex.2004) ("If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist.").

12. *See Walker,* 827 S.W.2d at 843.

13. *In re Prudential,* 148 S.W.3d at 135–36.

14. Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.02(a)(6), 1977 Tex. Gen. Laws 2039, 2040 (former Tex.Rev.Civ. Stat. art. 4590i, § 1.02(6)), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex.

Gen. Laws 847, 884; *see also* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11, 2003 Tex. Gen. Laws 847, 884 (same); *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex.2005) (citing statutes).

15. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(d), 1995 Tex. Gen. Laws 985, 986 (amended 2003) (current version at TEX. CIV. PRAC. & REM.CODE § 74.351(a)); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001).

16. Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 10.01, sec. 74.351(s), 2003 Tex. Gen. Laws 847, 876–77.

17. *See* TEX. CIV. PRAC. & REM.CODE § 74.002(a) ("In the event of a conflict between this chap-

## B. Does § 74.351(s) Apply to Potential Claims?

■ The court of appeals found section 74.351(s) was inapplicable, holding it applied only to claims that have been filed, not potential claims that are being investigated. The statute itself says it applies to "all discovery in *a health care liability claim*," a term defined as follows:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.[18]

Nothing in this definition limits "health care liability claim" to filed suits; instead, it extends coverage to "a cause of action." That term generally applies to facts, not filings:

A cause of action has been defined "as a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." [19]

Similarly, Black's Law Dictionary defines "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." [20] In many different contexts, Texas law recognizes that a "cause of action" relates to facts, whether or not suit is ever filed:

- for limitations purposes, "a cause of action accrues when *facts* occur that authorize a party to seek justice," [21] and may be barred even if it is never pleaded; [22]
- for special exceptions, the pleader must have an opportunity to amend unless the underlying *facts* show no cause of action exists; [23] and
- for res judicata, a "cause of action which arises out of [the] same *facts* should, if practicable, be litigated in the same lawsuit," and may be barred even if it was never filed.[24]

■ The court of appeals said that "[i]mplicit in the definition of 'cause of action' is that the essential facts are known." [25] But if that were true, no

---

18. *Id.* § 74.001(a)(13).

19. *A.H. Belo Corp. v. Blanton,* 133 Tex. 391, 129 S.W.2d 619, 621 (1939) (quoting 1 Tex. Jur. 1st *Actions* § 15 (1929)); accord, *Mercantile Bank & Trust Co. v. Schuhart,* 115 Tex. 114, 277 S.W. 621, 624 (Tex.1925) (quoting *Western Wool Comm'n Co. v. Hart,* 20 S.W. 131, 132 (Tex.1892)).

20. Black's Law Dictionary 235 (8th ed.2004).

21. *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 288 (Tex.2004) (emphasis added); *see also Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 120 (Tex.2001); *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 210 (Tex.1999).

22. *See, e.g., Ford v. Exxon Mobil Chem. Co.,* 235 S.W.3d 615, 618 (Tex.2007) (emphasis added) (noting that limitations barred unpleaded "cause of action").

23. *See, e.g., Texas A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 840 (Tex.2007).

24. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627, 629 (Tex. 1992) (emphasis added); *see also Citizens Ins. Co. of Am. v. Daccach,* 217 S.W.3d 430, 448 (Tex.2007) (noting that "cause of action" not asserted by class may be barred by res judicata).

25. 191 S.W.3d 483, 487.

"cause of action" would exist until a judgment based on it became final. Texas law has never required that a plaintiff know all the essential facts before a cause of action exists. To the contrary, a cause of action accrues for limitations purposes when a claimant learns of an injury, even if the rest of the essential facts are unknown.[26] Undoubtedly, unfiled causes of action arise and expire every day, sometimes precisely because the claimant is unaware of the essential facts.

The statute here confirms in several places that the term "cause of action" was used in the general sense relating to underlying facts rather than a more limited sense applicable only to filed suits. The statute requires that persons "asserting a health-care liability claim shall give written notice of such claim ... at least 60 days before the filing of a suit."[27] It also makes provision for limited discovery "after a claim is filed."[28] If "claim" includes only filed suits, the first would be impossible and the second redundant.

The court of appeals also relied on legislative history, pointing out that drafts during the legislative process initially prohibited Rule 202 depositions, then partially allowed them, and finally removed any reference to them altogether.[29] But one cannot infer that removing an explicit ban on presuit depositions means they are allowed, because the statute as finally passed expressly states that *all discovery* is prohibited, and the three exceptions it allowed did not include Rule 202. "If Par-

liament does not mean what it says, it must say so."[30]

Because the statute here specifically applies to "a cause of action against a health care provider," it applies both before and after such a cause of action is filed. To the extent a presuit deposition is intended to investigate a potential claim against a health-care provider, it is necessarily a "health care liability claim" and falls within the coverage of section 74.351(s).

### C. Does the "Nonparty" Exception in § 74.351(s) Apply?

■ In the alternative, Allan argues that if the statute applies to unfiled claims, its third exception allowing discovery from "nonparties" could apply here. But this argument proves too much—if everyone qualifies as a "nonparty" until suit is filed, then the statute places no restriction on presuit discovery whatsoever. This would be plainly contrary to the statute's purpose, as well as its application to causes of action before they are filed. Moreover, by specifically referencing depositions of nonparties "under Rule 205" rather than of parties under Rule 199, the statute makes an apparent distinction between those who are third parties to a dispute and those directly threatened by it. As the petition here specifically listed the relators as having an adverse interest in the potential suit (a requirement of Rule 202),[31] they were not "nonparties" from whom depositions were allowed by Rule 205.

---

**26.** *Schneider,* 147 S.W.3d at 279; *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners L.P.,* 146 S.W.3d 79, 93–94 (Tex.2004).

**27.** Tex. Civ. Prac. & Rem.Code § 74.051(a).

**28.** *Id.* § 74.351(u).

**29.** 191 S.W.3d at 487–88.

**30.** *Brazos River Auth. v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 109 n. 3 (1961)

(citing A.P. Herbert, The Uncommon Law, 313 (7th ed.1950)).

**31.** Tex.R. Civ. P. 202.2(f)(1) (requiring that if suit is anticipated, petitioner must "state the names of the persons petitioner expects to have interests adverse to petitioner's in the anticipated suit, and the addresses and telephone numbers for such persons").

### D. Does § 74.351(s) Lead to Absurd Results?

Allan argues that construing section 74.351(s) to prohibit Rule 202 depositions would lead to absurd results.[32] To the contrary, given the findings made in this legislation, it is hard to see how Rule 202 could apply in these circumstances.

Rule 202 depositions are not now and never have been intended for routine use. There are practical as well as due process problems with demanding discovery from someone before telling them what the issues are. Accordingly, presuit depositions are available under Rule 202 only if a trial court makes one of two findings:

- allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit; or
- the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure.[33]

■ Addressing the latter first, when the Legislature enacted section 74.351, it expressly found that the benefits of deposing health care providers *do not* outweigh the burden and expense involved until after an expert report is served. Absent a constitutional claim, this finding by the Texas Legislature is not one that trial judges here or there are at liberty to disregard. When "[t]he Legislature has drawn a careful balance between the competing policy considerations ... [c]ourts should not disturb that balance or graft additional exceptions onto the statute absent constitutional concerns." [34]

■ Addressing the first ground, Allan argues that banning presuit depositions may cause a failure of justice for three reasons. First, he suggests health-care providers may try to avoid accountability by intentionally making inadequate records so claimants cannot prepare expert reports from them. There is no indication that is the case here; but even if there were, section 74.351(s) expressly allows depositions on written questions and other written discovery to fill in whatever blanks may exist. Moreover, the state of the records can be taken into account in deciding whether a report represents a good faith effort to comply with the statute.[35]

■ Second, Allan says attorneys may hesitate to represent clients in health-care claims if they run the risk of incurring sanctions for filing claims that turn out to be groundless.[36] But the sanctions rules do not require an attorney to be right; they require an attorney to make a reasonable inquiry.[37] To the extent section 74.351(s) prohibits a particular line of inquiry, no attorney could be faulted for failing to conduct it.

---

32. *See* TEX. GOV'T CODE § 311.021(3) ("In enacting a statute, it is presumed that ... a just and reasonable result is intended...."); *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) ("If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results."); *Gilmore v. Waples*, 108 Tex. 167, 188 S.W. 1037, 1038 (1916) ("There are instances where the literal meaning of a statute may be disregarded. But it is only where it is perfectly plain that the literal sense works an absurdity or manifest injustice.").

33. TEX. R. CIV. P. 202.4(a).

34. *Irving Healthcare Sys. v. Brooks*, 927 S.W.2d 12, 17 (Tex.1996).

35. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(*l*).

36. *See id.* § 10.001; TEX.R. CIV. P. 13.

37. *Id.*

Third, Allan posits situations in which those in failing health may need to perpetuate their own testimony by presuit depositions. Perhaps it is true that potential defendants would object to such depositions, though surely some might take a different view of their last chance to depose the plaintiff than they take of being deposed themselves. But in any event, nothing hinders plaintiffs from telling what happened to their own experts, who can use those statements to file a report as quickly as a plaintiff wants.

Unquestionably, requiring an expert report without much discovery makes it harder to pursue a health-care liability claim. But allowing health-care claims to be pursued before anyone knows whether something was done wrong has costs too. These competing concerns were once left to the discretion of each trial judge, but the Legislature has withdrawn that discretion after finding that the costs of unrestricted discovery was being afforded too little weight.[38] Absent a constitutional claim, Allan's arguments that the statute is unwise or unfair must be addressed to the Texas Legislature.

\* \* \*

▮ A trial or appellate court has no discretion in determining what the law is or in applying the law to the facts, even if the law is somewhat unsettled.[39] Accordingly, the court of appeals abused its discretion in concluding that section 74.351(s) does not bar taking Rule 202 depositions regarding health-care claims. We conditionally grant the writ of mandamus and direct the courts below to vacate their orders allowing those depositions. The writ will issue only if they fail to comply.

O'NEILL, J., concurring.

Justice O'NEILL, Justice, concurring.

The Court concludes that, until an expert report is filed, discovery concerning a potential health care liability claim against a provider is limited to that prescribed in section 74.351(s) of the Civil Practice and Remedies Code, which does not include Rule 202 presuit depositions. *See* Tex. Civ. Prac. & Rem.Code § 74.351(s). I agree, and fully join the Court's opinion. I write separately, though, to emphasize that while the Legislature's purpose in enacting Chapter 74 was to decrease costs associated with meritless claims, it sought to do so "in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis." Act of June 1, 2003, 78th Leg., R. S., ch. 204, § 10.11(b)(3), 2003 Tex. Gen. Law 847, 884. Accordingly, if the discovery methods that section 74.351(s) allows are fully and effectively utilized but fail to yield information necessary to assess the merits of the potential claim, *e.g.*, the medical records are lost or indecipherable and responses to written questions are unenlightening or evasive, I would leave some discretion in the trial court to allow discovery under Rule 202 if "a failure . . . of justice in [the] anticipated suit" would otherwise result. Tex.R. Civ. P. 202. Because, in this case, the potential claimant has not availed himself of the discovery tools that the rules

---

38. *See* Michael S. Hull, et al., *House Bill 4 and Proposition 12: An Analysis with Legislative History*, 36 Tex. Tech L.Rev. 1, 5 (2005) (noting that after enactment of expert report and bond requirements in 1995, "by 2003, the provision was in substantial need of reform. The 180–day deadline was rarely enforced. Report content had dwindled to where the cost-bond requirement became a procedural hurdle for plaintiff and defense lawyers to argue about, rather than an opportunity for meaningful review prior to the parties expending substantial effort in discovery.").

39. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135 (Tex.2004).

concerning health care liability claims allow, I agree with the Court that the presuit depositions he seeks are prohibited.