# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00313-CV

**Appellant, PM Management-Trinity NC, LLC d/b/a Trinity Care Center//
Cross-Appellants, Michael Kumets, Pavel Kumets, and Strul Kumets, Individually and as
next friend for Yevgeniya Kumets**

**v.**

**Appellees, Michael Kumets, Pavel Kumets, and Strul Kumets, Individually and as next
friend for Yevgeniya Kumets// Cross-Appellee, PM Management-Trinity NC, LLC d/b/a
Trinity Care Center**

---

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
## NO. 10-139-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

---

## CONCURRING AND DISSENTING OPINION

I join with Chief Justice Jones in this Court's judgment affirming the district court's dismissal of the Kumetses' "improper billing" claims for generally the same reasons set forth in his opinion. However, those same basic principles also compel us, at least in the procedural posture of the Kumetses' appeal, to render judgment dismissing the Kumetses' claims for relief under health and safety code section 242.1135 based on alleged retaliation. Because both of my colleagues reach a contrary conclusion, I respectfully dissent to that portion of this Court's judgment.

The TMLA's expert-report requirement applies to a "claimant" "[i]n a health care liability claim"(HCLC).**[1]** *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West 2011). The TMLA defines an HCLC as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). As the Texas Supreme Court has observed, this definition consists of three basic components or elements: (1) a physician or health care provider must be the defendant, (2) the "cause of action" must be about a patient's "treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care," and (3) that act, omission, or other departure by the defendant must be the alleged proximate cause of the "claimant's" professed injury. *See Cardwell v. McDonald*, 356 S.W.3d 646, 653 (Tex. App.—Austin 2011, no pet.) (citing *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010) (plurality op.) (discussing former Tex. Rev. Civ. Stat. art. 4509i, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884)); *Drewery v. Adventist Health Sys./Tex., Inc.*, 344 S.W.3d 498, 501 (Tex. App.—Austin 2011, pet. filed)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13).

---

**[1]** *See Cardwell v. McDonald*, 356 S.W.3d 646, 648 (Tex. App.—Austin 2011, no pet.) (borrowing the acronym from *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392 (Tex. 2011), and *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525 (Tex. 2011) (per curiam)).

There is no dispute that appellees, the defendants below, are health care providers; consequently, the first element of the HCLC definition is satisfied. Turning to the second element, it is important to note that the statutory focus is the nature of the "cause of action" being asserted, *see id.* § 74.001(a)(13), a phrase that denotes the existence or alleged existence of "a fact or facts entitling one to institute and maintain an action, which must be proved in order to obtain relief" or a "group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person." *Cardwell*, 356 S.W.3d at 654 (citing *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding) (quoting *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939); Black's Law Dictionary 235 (8th ed. 2004))); *see Certified EMS, Inc. v. Potts*, 355 S.W.3d 683, 691 (Tex. App.—Houston [1st Dist.] 2011, pet. granted) (op. on reh'g) (making the same observation). Consequently, the Legislature's use of "cause of action" signals that we are to look to whether the right of relief being asserted is predicated on certain types of facts rather than to the particular legal theories under which those facts purportedly operate to confer the right of relief. *See Cardwell*, 356 S.W.3d at 654 (citing *Certified EMS, Inc.*, 355 S.W.3d at 691-92). The Legislature makes this further explicit in emphasizing that "whether the claimant's claim or cause of action sounds in tort or contract" is not what controls whether the cause of action is an HCLC. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13); *see also In re Jorden*, 249 S.W.3d at 421-22 (similarly observing that because a "cause of action" derives from the presence of certain types of facts, its existence does not depend on whether suit has even been filed). Moreover, consistent with the TMLA's focus on facts rather than legal theories, the Texas Supreme Court has repeatedly emphasized that courts are to look to the "underlying

3

nature," "essence," or "gravamen" of the cause of action rather than the manner in which it is pleaded. *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847 (Tex. 2005); *see also Yamada*, 335 S.W.3d at 196 (adding that "[a]rtful pleading does not alter that nature"). "[W]e focus on the essence of [the plaintiff's] claim and consider the alleged wrongful conduct and the duties allegedly breached, rather that the unfortunate injuries [the plaintiff] suffered." *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 851.

Of particular significance to this case, the Texas Supreme Court has derived or extended from these principles a rule that the same facts giving rise to an HCLC cannot be asserted as a basis for a non-HCLC[2] without complying with the TMLA's requirements. *See Yamada*, 335 S.W.3d at 196-98; *accord Turtle Healthcare Grp., L.L.C. v. Linan*, 337 S.W.3d 865, 868-69 (Tex. 2011) (per curiam). To hold otherwise, the supreme court has reasoned, would invite plaintiffs to "split or splice[]" HCLCs "into a multitude of other causes of action with different standards of care, damages, and procedures . . . contraven[ing] the Legislature's explicit requirements." *Yamada*, 335 S.W.3d at 197-98 (citing *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 854).

Chief Justice Jones correctly concludes that the Kumetses' "improper billing" theory of recovery, if not in itself an HCLC, must be dismissed under *Yamada* because it is predicated on the same facts that also underlie claims that the district court dismissed as HCLCs and concerning which the Kumetses do not appeal. *See supra at __* (citing *Yamada*, 335 S.W.3d at 192-94). The same reasons also compel dismissal of the Kumetses' claims for relief under health and safety code section 242.1135.

---

[2] That is, a cause of action other than an HCLC.

4

In their live pleading, the Kumetses asserted essentially seven theories of recovery: (1) professional negligence and negligence per se by PM Management; (2) breach of fiduciary duty by PM Management; (3) breach of contract by PM Management; (4) fraud or negligent misrepresentation by all three defendants (i.e., PM Management, Trisun, and Threadgill); (5) negligent hiring, supervision, management and retention by PM Management; (6) DTPA violations by all three defendants; and (7) retaliation by PM Management in violation of health and safety code section 242.1335. The district court held that "[a]ll claims asserted by [the Kumetses] against [PM Management] constitute a 'health care liability claim' . . . except for [the Kumetses'] . . . 'Texas Health & Safety Code § 242.1335 retaliation claim,'" and dismissed all of the other claims based on what the court held to be the Kumetses' failure to file an adequate expert report. The Kumetses have appealed these dismissals only with respect to claims predicated on alleged improper billing. They have not challenged the district court's rulings that their remaining claims are HCLCs and must be dismissed. Consequently, those rulings are binding on appeal. *See Yamada*, 335 S.W.3d at 196-97.

Significantly, as one of the factual bases supporting their breach-of-fiduciary duty theory of recovery, the Kumetses alleged that "PM Management . . . retaliated against [Yevgeniya Kumets] once complaints were made about her poor treatment in violation of Texas law."[3] This is the same central allegation of operative fact on which they predicate their theory of recovery under health and safety code section 242.1135. The district court held that the

_____

[3] In their original petition, the Kumetses also alleged the same conduct as a basis for their negligence theory, but omitted that allegation in their amended petition.

Kumetses' breach-of-fiduciary-duty claim was an HCLC and dismissed it in its entirety. Even if one might question the correctness of that ruling, it remains that the Kumetses did not challenge it on appeal. Thus, we confront a procedural scenario analogous to that addressed by the Texas Supreme Court in *Yamada*.

In *Yamada*, two plaintiffs sued Dr. Yamada after their daughter collapsed at a water park and later died from a heart condition. *See id.* at 193. The parents sought recovery under theories of both ordinary and professional negligence based on common allegations that Yamada had failed to properly advise the park owners about its safety practices and placement of automatic external defibrillators. *See id.* at 193-94. The Second Court of Appeals held that the parents had asserted both an HCLC predicated on violation of the medical standards of care and a claim or claims for ordinary negligence, and dismissed only the former for failure to file an expert report. *Id.* at 193. The parents did not appeal to the supreme court the holding that they had asserted an HCLC, but Yamada appealed the court of appeals' refusal to dismiss the remaining claims. The supreme court took pains to emphasize that it was bound by the lower court's holding that the parents had asserted, in part, an HCLC, because the parents had not appealed the ruling. *See id.* at 195-96. Nonetheless, because it was thus established for appellate purposes that the parents had asserted an HCLC predicated on the same facts the parents had pled in support of their non-HCLC, it followed that the remaining claims, predicated as they were on the same underlying facts, also had to be dismissed. *See id.* at 193-94. The circumstances here are materially similarly—as in *Yamada*, the plaintiffs purport to assert a non-HCLC predicated on factual allegations that also underlie

6

what is now established to be an HCLC. And, as in *Yamada*, we must dismiss the non-HCLC, the Kumetses' claim for relief under health and safety code section 242.1135.

The majority's analysis does not suggest any basis for distinguishing this case from *Yamada*. The gravamen of the majority's analysis is that the Kumetses' claim for relief under health and safety code section 242.1335, standing alone, is capable of being viewed as a non-HCLC if we accept the Kumetses' characterization of that claim as seeking "purely economic" damages. *See supra* at __. The linchpin of this analysis is a construction of the third component of the HCLC definition—the "injury" that is proximately caused to the "claimant" by that the defendant's alleged act, omission or departure giving rise to the "cause of action" is restricted solely to personal injury capable of giving rise to non-economic damages. *See supra* at __. Leaving aside whether this construction can be reconciled with the controlling statutory language,[4] it remains that the Kumetses' claim for relief under health and safety code section 241.1335 is predicated upon the same underlying facts as their breach-of-fiduciary duty claim, a claim that is established for appellate purposes to be an HCLC. The mere fact that the Kumetses profess to seek different kinds of damages under the two theories does not impact this analysis. *See* Tex. Civ. Prac. & Rem. Code

---

[4] *Cf. TTHR, L.P. v. Coffman*, 338 S.W.3d 103, 110 (Tex. App.—Fort Worth 2011, no pet.) (explaining that "injury" under third element of HCLC definition is not limited to physical injury); *Victoria Gardens v. Walrath*, 257 S.W.3d 284, 288 (Tex. App.—Dallas 2008, pet. denied) ("It is true that the definition of 'claimant' in section 74.001(a)(2) suggests that the drafters assumed that the damages being sought in a health care liability claim would ordinarily be 'damages as the result of the bodily injury or death' . . . . But the fact remains that the definition of 'health care liability claim' itself contains no limitation based on the type of damages being sought. . . . [I]f a plaintiff alleges that a health care provider breached an applicable standard of health care, and the alleged breach proximately caused injury to or the death of a claimant, the claim is a health care liability claim, regardless of the kind of damages prayed for by the plaintiff.").

Ann. § 74.001(13) ("whether the claimant's claim or cause of action sounds in tort or contract" is not what controls whether the cause of action is an HCLC). Consequently, even if the section 241.1335 claim could be viewed as a non-HCLC, *Yamada* would still compel us to dismiss it. Accordingly, I respectfully dissent to the majority's contrary judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Filed: April 20, 2012

8