

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00070-CV

IN RE DANIEL A. HUNT

Original Mandamus Proceeding

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

On October 10, 2024, the Honorable Steven Kirkland[1] (Respondent) entered an order granting Ironhorse Unlimited, Inc., and Phillip Surls's (Real Parties in Interest or RPIs) verified petition to take Daniel A. Hunt's (Relator) presuit oral deposition, pursuant to Rule 202 of the Texas Rules of Civil Procedure (Rule 202 order).[2] By that order, Relator was not only ordered to sit for a deposition but was further ordered to produce documents responsive to a twenty-seven-item request for production. On October 23, 2024, Relator filed a petition for a writ of mandamus maintaining that the trial court abused its discretion when it granted RPI's Rule 202 petition.[3] Relator argues that there was no evidence to support the trial court's finding that the likely benefit of allowing Relator's deposition to go forward outweighed the burden or expense of taking his deposition. Relator asks this Court to grant his petition for a writ of mandamus and to instruct the trial court to set aside its order authorizing RPIs to take Relator's presuit deposition.

Because we find that RPIs failed to show that the likely benefit of taking Relator's presuit deposition outweighed the burden and expense of doing so, we conditionally grant his petition for a writ of mandamus and direct Respondent to vacate its Rule 202 order. The writ will issue only if the trial court fails to vacate its order within ten days of the date of this opinion.

---

[1]The 173rd Judicial District Court was sitting for the 392nd Judicial District Court.

[2]Rule 202 of the Texas Rules of Civil Procedure permits a person to petition a trial court for an order authorizing a deposition before a lawsuit is filed. TEX. R. CIV. P. 202.1.

[3]Originally filed in the Twelfth Court of Appeals, this original proceeding was transferred to this Court by the Texas Supreme Court after all three justices of the Twelfth Court of Appeals recused. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

## I. Standard of Review

Mandamus will issue "only when the mandamus record establishes (1) a clear abuse of discretion . . . , and (2) the absence of a clear and adequate remedy at law." *In re Blakeney*, 254 S.W.3d 659, 661 (Tex. App.—Texarkana 2008, orig. proceeding) (citing *Cantu v. Longoria*, 878 S.W.2d 131, 132 (Tex. 1994) (per curiam) (orig. proceeding)). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding principles. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). The party seeking mandamus relief has the burden to provide the court with a sufficient record to support its requested relief. *Id.* at 837.

"A trial . . . court has no discretion in determining what the law is or in applying the law to the facts . . . ." *In re Jorden*, 249 S.W.3d 416, 424 (Tex. 2008) (orig. proceeding); *Huie v. DeShazo*, 922 S.W.2d 920, 927 (Tex. 1996) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 840). "Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion." *Huie*, 922 S.W.2d at 927–28.

## II. Background

In their Rule 202 petition, RPIs state,

> 8. On or about February 6, 2024, [RPIs] received a draft proposed resolution of the Henderson County Republican Party ("HCRP") which contained numerous false and disparaging statements about [RPIs]. The proposed resolution referenced that it had been "proposed by McKenzie Brown, Precinct 4W Chairman" (the "Proposed Resolution").[4]

---

[4]The proposed resolution at issue contained, in part, the following language:

> WHEREAS the public property known as "The Cut Off" has been illegally and illegitimately removed from the public's access, thus taking an important public resource from the citizens of Henderson County & the State of Texas, by Phillip Surls, IronHorse Unlimited[,] Inc.

On February 7, 2024, the attorney for RPIs delivered a cease-and-desist letter to Brown, "along with a litigation hold notice to preserve all evidence." According to their Rule 202 petition, Brown responded to their letter by communicating with RPI's attorney. Brown informed RPI's attorney that Relator had asked her to draft the proposed resolution and that she should encourage HCRP to adopt it at its next meeting. In addition, Brown said that she discussed the contents of the proposed resolution with a representative of a group called Save The Cutoff and that she drafted the proposed resolution with help from Bud Morton and Relator.[5] Because Brown responded to their cease-and-desist letter, RPI decided that they would not file a lawsuit against Brown.

RPIs also asserted in their petition that, on February 7, their attorney attempted to contact Relator by phone multiple times but that he was unsuccessful. RPI's attorney left voice messages informing Relator that the calls were being made in an attempt "to prevent publication and HCRP adoption of the Proposed Resolution and avoid litigation." Relator did not return the phone calls of RPI's counsel. On February 22, 2024, RPI's attorney delivered a cease-and-desist

. . . .

> WHEREAS in April of 2022[,] the Henderson County Commissioners approved a Notice of Violation to be issued to Phillip Surls & IronHorse Ranch, for actions prohibited by the County's Floodplain Ordinance & in violation of FEMAs flood plain regulations, which impact flood insurance rates throughout Henderson County.
>
> THEREFORE, BE IT RESOLVED that the Henderson County Republican Party supports the Henderson County Commissioners Court and the State of Texas working together to return The Cut Off to the public domain, to be used by the citizens of the Great State of Texas.

According to Brown, the proposed resolution was posted on the "Save The Cutoff Facebook page."

[5]Over Relator's objection, the trial court admitted Brown's sworn affidavit, which, for the most part, corresponded with the assertions contained in RPI's Rule 202 petition.

letter to Relator, demanding that he retract the identified defamatory statements pursuant to Section 73.055 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.055. The cease-and-desist letter stated, in part,

> It has recently come to our attention that you have published defamatory statements concerning Surls and Ironhorse. Specifically, beginning on or about February 5, 2024, you circulated to the Henderson County Republican Party precinct chairs a proposed resolution entitled "Resolution for The Cut Off" ("Resolution"). The Resolution contains numerous false and defamatory statements regarding Surls and Ironhorse. The false and defamatory publications concerned Surls' and Ironhorse's character, behavior, ethics, and reputation in the community. The false and disparaging publications included: "'The Cut Off' has been illegally and illegitimately removed from the public's access, thus taking an important public resource from the citizens of Henderson County & the State of Texas, by Phillip Surls and Ironhorse Unlimited, Inc."; "there has been clear historical precedent shown, that this land does not belong to the adjoining private landowner"; "the landowner has been instructed by the Texas Department of Transportation"; "The illegal construction of a pipe fence"; "Mr. Surls constructed the fence on an unauthorized fill, which impacts the waters of the United States"; "the Texas Parks and Wildlife Department's Kills and Spills Team has investigated the unauthorized levee constructed by Mr. Surls, and estimated a fish kill of 19,709 at a value of $804,633.45"; and "in April of 2022 the Henderson County Commissioners approved a Notice of Violation to be issued to Phillip Surls & IronHorse Ranch[.]"

> In particular, it has come to my attention that you published the proposed resolution knowing full well that it contained the false statement concerning $804,633.45 value. When the erroneous dollar figure was drawn to your attention, you chose to proceed with publication of the false information instead of changing the proposed resolution to contain the correct dollar figure.

> In addition, your conduct is even more egregious because you are fully aware the disputed matters between the Save the Cutoff group, Ironhorse, and Surls are being actively litigated in three separated lawsuits . . . .

> This behavior will not be tolerated. Accordingly, you are hereby demanded to cease and desist your persistent, malicious, and intentional actions including, but not limited to making false, disparaging, or defamatory publications regarding Surls or Ironhorse to any person or entity.

This letter acts as your final warning to discontinue this harassing conduct before Surls and Ironhorse pursue civil legal action against you, including injunctive relief. . . .

The letter continued,

This letter is sent in satisfaction of TEX. CIV. PRAC. & REM. CODE § 73.055, commonly referred to as the "Defamation Mitigation Act." Failure to timely adhere to all demands of this letter *will result in a lawsuit being filed against you and exemplary damages sought* to the fullest extent allowed under Texas Law."

(Emphasis added). According to RPIs, Relator did not acknowledge receipt of the cease-and-desist letter.

RPIs further maintained that "[p]re-suit discovery exists for the very purpose [RPIs] seek to advance: investigation into [Relator]'s injurious defamation in his private communications with others." They continued, "As the driver of [RPI]'s potential claims[,] [Relator] knows many more details and has greater knowledge of what he did, why he did what he did, and with whom he conspired to defame [RPIs] in bringing about the creation of the Proposed Resolution, its publication, and its adoption by the HCRP." According to RPIs, "counsel's unsuccessful attempts to obtain the necessary information from [Relator] prove[d] that [they] c[ould] only obtain the necessary information through th[e] Rule 202 Petition."

On June 3, 2024, the trial court held a hearing on RPI's petition to take Relator's presuit deposition. Surls, who is the owner of Ironhorse, testified that he wanted to investigate Relator's involvement with the "Henderson County Republican Party[,] Resolution for The Cut Off." Surls explained that he wanted to find out the "[w]ho, when, why, where. Why - - that's it." He wanted to know who told Relator "to do it[,]" and why Relator got involved with crafting the resolution. According to Surls, he was concerned about his reputation, explaining, "In our

6

business,[6] our reputation is everything, and when people - - you make a mistake in our line of business, people get - - can possibly get hurt or die, and so it's very confidence driven, a good reputation." Surls said that he learned of the proposed resolution when an individual contacted him that it had been posted on Facebook. Surls began attempting to contact Relator through phone calls, emails, and then the cease-and-desist letter, to which Relator did not respond.

Surls testified that he did not agree with the statement contained in the proposed resolution that he "illegally and illegitimately removed" "the public property known as the cutoff." He also maintained that Ironhorse had nothing to do with removal of the property. Furthermore, Surls stated, among other concerns with the proposed resolution, that Ironhorse had not been contacted by the Texas Parks and Wildlife Department. Surls said he "definitely" had an issue with the statement that the "Texas Parks & Wildlife Department's Kills and Spills Team" "investigated an unauthorized levee constructed by Mr. Surls and estimated fish kill 19,000 at a value of [$]804,000.[00]." According to Surls, the department never contacted him about the issue nor did it ever fine him for unsuitable conduct. Surls stated that he was concerned that the publication of the resolution would have a negative effect on two other lawsuits in which he was involved. Surls conceded that his understanding of Relator's involvement in the proposed resolution was based, in large part, on Brown's statements to him. Surls asked, "If [Relator] didn't have anything to hide, why wouldn't he answer a phone call or emails or talk to us?"

---

[6]Surls was in the gas pipeline business.

7

Surls testified that he did not know how much inconvenience or expense Relator would incur if the deposition went forward. Surls did, though, respond to questions on those subjects by bringing up his own expense and consternation at being involved in legal proceedings, as can be seen from the following exchange:

> Q. . . . [D]o you understand that what you're pursuing today is inconvenient for Mr. Hunt?
>
> A. Do you want to talk about inconvenient? How would you like to be sitting right here?
>
> [Counsel for RPIs]: Calm down.

After listening to the testimony and hearing arguments of counsel, on October 10, 2024, Respondent entered an order granting RPI's Rule 202 petition, finding "that the likely benefit of allowing [RPIs] to take [Relator's] deposition to investigate a potential claim outweigh[ed] the burden or expense of the procedure."

## III. Discussion

Rule 202.4 of the Texas Rules of Civil Procedure states,

> (a) *Required Findings*. The court must order a deposition to be taken, if, but only if, it finds that:
>
> (1) allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit[;] or
>
> (2) the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure.

TEX. R. CIV. P. 202.4(a).

"Rule 202 depositions are not now and never have been intended for routine use. There are practical as well as due process problems with demanding discovery from someone before telling them what the issues are." *In re Jorden*, 249 S.W.3d at 423. Consequently, "[c]ourts must strictly limit and carefully supervise pre-suit discovery to prevent abuse of the rule." *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (per curiam) (orig. proceeding). Furthermore, it is the Rule 202 petitioner's burden to establish the facts necessary to obtain the requested deposition. *See In re Hewlett Packard*, 212 S.W.3d 356, 363–64 (Tex. App.—Austin 2006, orig. proceeding [mandamus denied]).

Here, RPIs argued to the trial court that they needed information from Relator to determine whether they should file against him what presumably would be a defamation lawsuit. RPIs were therefore required to show that obtaining that information via Relator's presuit deposition outweighed the burden or expense incurred by Relator. RPIs failed to meet their burden.

By the time RPIs filed their petition to take Relator's presuit deposition, they were already in possession of an abundance of information, including, but not limited to, the following: (1) who actually prepared the draft of the resolution, (2) who asked that person to prepare the draft, (3) the names of additional persons who were involved in its preparation, (4) the approximate date the resolution was drafted, (5) by what means the draft was disseminated to the public, (6) what property was at issue, (7) the substance of the complaints against RPIs, and (8) the manner in which the alleged defamatory statements caused them harm.

9

Further, RPI's cease-and-desist letter spoke directly to RPI's understanding of the state of mind of Relator: "knowing full well," "egregious," "fully aware," "malicious," and "intentional." RPI's cease-and-desist letter did not express any uncertainty, or need for information, before filing suit. Instead, RPI's cease-and-desist letter stated in stern terms that, if the complained-of statements were not withdrawn, a lawsuit would be filed "within **5 days**" of Relator's receipt of the letter. At the hearing, Surls testified that he had already concluded that Relator persisted in the publication knowing that the publication was false. We express no position on the merits of those matters, but instead, we summarize the information available to RPIs, and RPI's own assessment of that information, at the time RPIs sought the Rule 202 deposition.

Given the information already available to RPIs at the time they sought to take the Rule 202 deposition, any benefit to be gained from it is marginal. Further, the balancing required by Rule 202 is different than what was and is proposed by RPIs.

At the hearing, Surls testified, "Instead of wasting this Court's time in a full-blown lawsuit, I would like to talk to [Relator] and find out . . . why he had McKenzie Brown do these things knowing they were false." RPI's counsel echoed that desired relief: "[W]hy would [Relator] knowingly publish false things [about Surls] and add in his company? That's what the Rule 202 is for."

The balancing RPIs proposed to the trial court amounted to a comparison of the relative expense of a Rule 202 deposition with that of a trial. RPI's proposed balancing entirely omitted consideration of the burden or expense of the procedure on Relator. Again, in our Court, RPIs

presented similar arguments, asserting that a Rule 202 deposition potentially saves the time and expense of trial[7] and that the burden on Relator, the would-be-deponent, need not be considered.[8]

RPI's position is similar to arguments considered, and rejected, by the Austin Court of Appeals. *See id.* There, three employees left Dell Computer Company and went to work for Hewlett-Packard. *Id.* at 359. Dell suspected that the employees were "misappropriating Dell's trade secrets for the benefit of Hewlett–Packard and [sought] to investigate its suspicions by utilizing rule 202 pre-suit depositions of its former employees." *Id.* Dell urged that Rule 202 depositions were warranted because "[i]f it turns out that the deposition[s] [reveal] a legitimate explanation and we do not want to go forward, the depositions haven't been in waste because it saved everybody a lot of time and energy that would be expended if there was actually a lawsuit filed." *Id.* at 361 (first alteration in original). The court rejected Dell's deposition-to-trial comparison, stating:

> Dell's view of rule 202's benefit/burden analysis would allow individuals or companies to take pre-suit depositions of business competitors in a broad range of circumstances because the expense of taking a limited number of depositions can almost always be argued to be less than the expense of filing and prosecuting a lawsuit.

*Id.* at 362. The court assessed the balance by holding that any benefit to Dell from finding out whether suit was warranted was outweighed by "the burden imposed on the potential deponents" in that case. *Id.*

---

[7]"Mr. Surls' decision not to file a defamation suit against Mrs. Brown, and to instead pursue a Rule 202 deposition, was designed to avoid wasting the Court's time, and save the expense of a lawsuit."

[8]"Relator argues there is no evidence in the record that Surls knew the burden on Mr. Hunt. There does not need to be any such evidence in order for [the] trial court's finding to be supported by sufficient evidence and the [o]rder to be valid. TEX. R. CIV. P. 202.4(a)(2) imposes on petitioner the burden to present evidence of 'the burden or expense of the procedure' *not* the burden or expense on the proposed deponent (Hunt)." (Footnotes omitted).

11

We likewise hold that RPI's deposition-to-trial comparison is an improper expression of the balance of Rule 202.4(a)(2). We further reject RPI's position that the balancing can be done without taking into consideration the burden or expense on the would-be deponent.

RPIs had already determined to their satisfaction that Relator had acted maliciously. RPIs had already determined to sue Relator. RPIs used an improper balancing approach and, hence, failed to provide the trial court with evidence to carry their burden under a proper balancing.

## III.    Conclusion

A deposition, once taken, "cannot be untaken." *In re Millwork*, 631 S.W.3d 706, 715 (Tex. 2021) (per curiam) (orig. proceeding) (quoting *In re Liberty Cnty. Mut. Ins. Co.*, 557 S.W.3d 851, 858 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding)). Keeping that in mind, the Texas Supreme Court has "consistently held" that "parties lack an adequate appellate remedy from orders compelling discovery beyond what the rules allow." *Id.* at 714; *see In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (per curiam) (orig. proceeding). Consequently, it is well settled that an erroneous "Rule 202 [order] may be set aside [via] mandamus." *In re Wolfe*, 341 S.W.3d at 933.

12

We, therefore, find that Respondent erred when it granted RPI's petition to take Relator's presuit deposition. We conditionally grant Relator's petition for a writ of mandamus and direct Respondent to vacate its order. The writ will issue only if the trial court fails to vacate its order within ten days of the date of this opinion.

Jeff Rambin
Justice

Date Submitted: December 16, 2024
Date Decided: December 17, 2024