**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed August 21, 2025.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-24-00106-CV

---

### IN RE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF TEXAS, Relator

---

**ORIGINAL PROCEEDING
WRIT OF MANDAMUS
200th District Court
Travis County, Texas
Trial Court Cause No. D-1-GN-24-004200**

---

### DISSENTING OPINION

I respectfully dissent for the reasons stated in my dissenting opinion in *In re Office of the Attorney General of the State of Texas*, No. 15-24-00091-CV, 2025 WL ___ (Tex. App.—15th Dist. Aug. 4, 2025, orig. proceeding) (Brister, C.J., dissenting). I agree with the Court that nothing grants OAG authority to demand a pre-suit deposition in all corporate investigations as a matter of law. But when the Governor of Texas *specifically requests* that the Office of the Attorney General

("OAG") investigate a colorable claim that a corporation is *contributing* to a state crisis by *violating* state law, it is an abuse of discretion to deny a request for a pre-suit deposition unless outweighed by an equally serious and substantial burden on the deponent. There being no such showing here, I would conditionally grant relief.

I write briefly again here because I disagree with the Court's additional ground that dismissing OAG's request was proper due to "the thin record before the trial court," consisting of "only three exhibits." OAG's evidentiary record here actually contains 36 exhibits with over 300 pages, proved up by affidavit and filed with the court clerk. This was not simply a verified petition, as the Court would have it; these were exhibits filed seven weeks after the petition, proved up by affidavit, and submitted to the clerk two days before the hearing in the trial court as evidence for that hearing. Nothing in Rule 202 says such evidence doesn't count unless formally admitted at an evidentiary hearing. I would not block an investigation by the Executive Branch of state government into potential factors contributing to a state of disaster by imposing an evidentiary requirement that our rules do not state.

## I. The facts OAG proved support its request as a matter of law

The focus of OAG's investigation here differs from that in our earlier opinion. OAG asserts that Team Brownsville Inc. ("TBI") may have violated state criminal laws,[1] by transferring federal funds that could be spent *only* within the U.S. to entities operating in Mexico. OAG's verified petition included an affidavit by its trial counsel verifying as "true and correct" the following alleged facts:

- Governor Abbott asked OAG to investigate claims that NGOs "may be engaged in unlawfully orchestrating certain border crossings" in a letter dated December 14, 2022 (providing a link to that letter);

- OAG "has a reasonable basis to believe" TBI is one of the NGOs "assisting

---

[1]     Citing TEX. PENAL CODE §§ 37.10, 37.101.

immigrants seeking to enter the United States," citing a statement by TBI's Board President that it "performs work in Mexico," and statements by former TBI board members and volunteers that it has sent grants intended for services in Brownsville "to unknown persons in Mexico with little to no accountability as to its use"; and

- other TBI documents OAG had in hand (which it tendered in camera "at the Court's invitation" as a public filing "would seriously compromise OAG's investigation") indicate funds "have been used for unauthorized, and potentially illegal, practices."

The petition requested a pre-suit deposition under Rule 202 regarding TBI's "rules practices, and procedures" for requesting government funds, and distributing them to "immigrants, refugees, or aliens," or "to other nongovernmental entities."

Two days before the hearing on its petition, OAG filed 36 exhibits in support, all proved up by affidavit. They present the following direct and circumstantial evidence:

- FEMA awarded $350 million in 2023 to the Emergency Food and Shelter National Board Program to help nonprofit and faith-based organizations provide shelter and other services to persons "recently encountered by the Department of Homeland Security";

- the EFS program *prohibits* using those funds for "expenditures made outside of the United States" or "services provided to families and individuals outside of the United States";

- one of TBI's bank account statements shows it received $92,330 from "Efs Natl Brd Pgm" on September 11, 2023; and

- 20 TBI checks and ACH bank transfers from the same account show it sent funds to organizations whose websites and other documents indicate they provide humanitarian services in Mexico.

TBI's counsel did not object to the authenticity of these documents; as he

conceded, "Most of them come from our files."[2] TBI objected instead to hearsay, relevance ("I have no idea what these are"), and "conclusory, general, and vague." But the exhibits were all federal statutes, records, and reports that are not hearsay,[3] bank statements and checks proved up by a records custodian,[4] and copies of websites whose accuracy can be checked by following a link OAG proved. OAG's verified petition and counsel's argument at the hearing explained their relevance. And in any event, Rule 202 pleadings are not to be strictly construed; the standard is "less stringent than those normally required" as the party requesting party "will often not know enough facts" to be more specific, and likely wouldn't need a pre-suit deposition if it did.[5]

OAG's burden under Rule 202 was *not* to prove that TBI was improperly funneling federal funds to Mexico for expenditures there; that is for trial. The issue here is whether the benefit outweighed the burden of requiring a TBI corporate witness to sit for single pre-suit corporate deposition and explain why the circumstantial evidence OAG had produced was not suspicious. In that context, OAG's documents were "relevant" if, read together and in context, they had "any tendency" to support the *likelihood* that OAG had a legitimate claim.[6] Given the undisputed evidence that Governor Abbott *specifically requested* OAG's investigation during a major health and safety crisis, it was an abuse of discretion to deny such a simple request unless it was outweighed by some equally extraordinary burden. There is no such evidence here, or even a suggestion of it.

---

[2]   *See also* TEX. R. EVID. 902(5) (providing that publications "purporting to be issued by a public authority" are self-authenticating).

[3]   *See id.* 803(8).

[4]   *See id*. 803(6).

[5]   *Combs v. Tex. Civil Rights Project*, 410 S.W.3d 529, 535–36 (Tex. App.—Austin 2013, pet. denied).

[6]   *See* TEX. R. EVID. 401.

## II. Rule 202 presents a discovery motion, not a trial

In response to OAG's record exhibits, TBI filed no affidavits or exhibits, and offered no witnesses or evidence at the hearing. It instead urged the trial court to disregard all OAG's evidence because it had not been "admitted": "There's no evidence in front of you that's been admitted that can allow this deposition to go on. And even if you were to look at the verified complaint, it's based on hearsay." This emphasis on admissibility of evidence at a Rule 202 hearing reflects a basic misunderstanding of the procedure: *It is not a trial*.

A Rule 202 motion does not result in a judgment; it is effectively a motion for pre-suit discovery. Courts conduct many pre-trial hearings "entirely on paper," and are deemed to have "considered evidence at the hearing" even if it is "based solely on affidavits and exhibits filed beforehand."[7] Nothing in the Rule 202 prohibits that practice; it was important here because no other discovery responses were yet available, and the trial court had limited each side at the oral hearing to one hour. To cover its bases, OAG filed its documentary evidence with the clerk *and* tendered it to the trial judge at the hearing.

But the trial judge was having none of it. She declined to consider any of OAG's exhibits unless she formally admitted them: "I guess you'll have to convince me which ones should be admitted." This Court likewise errs by focusing solely on the "three exhibits that were admitted at the hearing" and disregarding everything else. Evidence filed with the clerk *and* at the hearing is evidence in the record; ignoring it by choosing not to "admit" it is an abuse of discretion.

Rule 202 is a rule for discovery. It appears in the section of the Rules of Civil

---

[7] *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005).

Procedure titled "Discovery."[8] Many of those rules address whether discovery responses can be admitted or excluded at trial,[9] but *none* require evidence to *request* them.[10] It would be odd to *require* admissible evidence as a condition to *obtain* admissible evidence. In the case of Rule 202, the party most likely to have the personal knowledge needed to prove up requested information is the party that has it—but objects to being deposed about it. We cannot require admissible evidence to obtain a pre-suit deposition when a pre-suit deposition is the only way to get it. I recognize that many of our fellow courts of appeals have held otherwise, but neither the Texas Supreme Court nor Rule 202 have ever said so.

This does not mean that pre-suit depositions should be routinely granted. They "never have been intended for routine use," and there are "practical as well as due process problems with demanding discovery from someone before telling them what the issues are."[11] "The intrusion into otherwise private matters authorized by Rule 202 outside a lawsuit is not to be taken lightly."[12] But while these concerns require close judicial scrutiny before granting a Rule 202 petition, they do not require satellite litigation or a mini-trial replete with sponsoring witnesses and hearsay objections to make the findings the rule requires. OAG's verified petition, plus its exhibits filed with the clerk, plus its arguments at the oral hearing explained why this is not a routine case, what the issues are, and why the circumstantial evidence available showed the likely benefit outweighed the burden. TBI objected that this did not prove whether it had done anything wrong, but that is the burden at trial, not

---

[8]    *See* TEX. R. CIV. P., Part II § 9.B.

[9]    *See, e.g.*, TEX. R. CIV. P. 192.3(f), (g); 193.6(a); 199.5(d); 201.1(f); 203.6(b); 215.2(b)(4).

[10]    The only discovery rule requiring evidence does so for *objections* to discovery based on privilege, and in that instance expressly provides that evidence may be offered "either by testimony at the hearing or by affidavits served on opposing parties." *Id*. R. 199.6.

[11]    *In re Jorden*, 249 S.W.3d 416, 423 (Tex. 2008).

[12]    *In re Does*, 337 S.W.3d 862, 865 (Tex. 2011).

6

here. What TBI never explained is why a deposition in the critical context here was outweighed by the burden of a single deposition.

The two companion cases this Court has recently addressed demonstrate why "admissible evidence" was not required in either. In both cases, the context was a border crises and the Governor's request to investigate NGOs as a potential contributing source. No judge in Texas could have been unaware of the border crisis; a judicial response that declined to judicially notice that crisis would not inspire confidence in our abilities. In the case involving Catholic Charities, the corporation's documents contained neither plans nor procedures for excluding aid to persons unlawfully in the U.S., a fact on the face of those records that required neither a sponsoring witness nor a business records affidavit. And in the present case, TBI's bank records appear to show receipt of funds that could not be spent in Mexico and transfers to Mexico from the same account. No one suggested in either case that these records were forged or unreliable, nor on the other hand that they were conclusive; but while these facts may not represent the whole story, in neither case was there any "admissible evidence" that they did not.

There is one final reason a punctilious application of the rules governing admissibility at trial is inappropriate here: the OAG was investigating a potential quo warranto action. Absent a statutory limitation, the Constitution gives the Attorney General "sole discretion" to decide when to file such actions, in part to prevent "the judiciary from broadly reading statutes as impliedly limiting that authority."[13] It is not for us to decide whether OAG "appears to have enough evidence to go forward with its quo warranto lawsuit"; that choice is solely for the Attorney General. Forcing OAG to file suit first rather than seek a pre-suit deposition impinges on that discretion. One tool the Supreme Court has used when the

---

[13] *Paxton v. Annunciation House, Inc.*, 2025 WL 1536224, at *11–12 (Tex. May 30, 2025).

7

constitutional duties of two branches of state government conflict (as those of OAG and the courts arguably do here) is whether one branch could accommodate the other without seriously infringing on the duties of either.[14] Accommodating OAG's Rule 202 request requires no more than what appellate courts often do: "consider the priorities of the other branches of Texas government."[15] I believe the trial court abused its discretion by failing to do that here.

## Conclusion

I would not hold (as the Court says) that courts must grant *all* deposition requests by a coordinate branch of State government every time a disaster occurs. But we *are* required to be "sensitive to a coordinate branch's authority, its entitlement to respect, and the presumptions of good faith and regularity that it is owed."[16] We fall short of that duty by addressing this case as if there were no crisis at the border, a fact nobody including TBI ever denied.

There was no conflicting evidence here. TBI presented nothing but the arguments of counsel—which the Court reminds us is not evidence. OAG had no burden to prove TBI's expenditures were unlawful, and TBI had no burden to prove they were not. But OAG offered evidence of (1) the Governor's request to OAG in the context of a border crises, and (2) TBI's transfer of money to Mexico from an account that also held federal funds for which that was prohibited. It was an abuse of discretion to deny a request for a pre-suit deposition absent a showing that the benefit of finding out the truth here substantially outweighed the burden of taking a

---

[14]     *See, e.g.*, *Webster v. Comm'n for Lawyer Discipline*, 704 S.W.3d 478, 484 (Tex. 2024); *In re Tex. House of Representatives*, 702 S.W.3d 330, 340 (Tex. 2024).

[15]     *In re Gulf Expl., LLC*, 289 S.W.3d 836, 842 (Tex. 2009) (citing *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 461 (Tex. 2008)); *see Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 451 (Tex. 2012).

[16]     *Webster v. Comm'n for Lawyer Discipline*, 704 S.W.3d 478, 496 (Tex. 2024).

single deposition as a matter of law. Because the Court holds otherwise, I respectfully dissent.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.