# IN THE SUPREME COURT OF TEXAS

═══════════

No. 18-0102

═══════════

IN RE COMANECHE TURNER, AS NATURAL PARENT AND NEXT FRIEND OF MT,
A MINOR, RELATOR

═══════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════

**Argued September 18, 2019**

JUSTICE LEHRMANN delivered the opinion of the Court.

The Texas Medical Liability Act limits discovery in a health care liability claim until the claimant serves an expert report in accordance with the Act on the physician or provider against whom the claim is asserted. In this case, the claimant sued one health care provider, served an expert report meeting the Act's requirements on that provider, and subsequently sought to depose another provider regarding the same underlying incident. We are asked whether the Act prohibits the deposition and accompanying document production unless and until the claimant serves an expert report on the provider whose deposition is sought. The court of appeals held that it does, but we disagree and conditionally grant mandamus relief.

## I. Background

Comaneche Turner delivered her child, MT, at Methodist Dallas Medical Center (the Hospital). Dr. Jeffrey Sandate was Turner's treating obstetrician. Turner sued the Hospital on

MT's behalf,[1] alleging that the Hospital's negligence in caring for Turner and MT during the labor and delivery proximately caused MT to suffer "profound and permanent brain damage." More specifically, Turner alleged that the nurses and other health care providers employed by the Hospital were negligent in the following respects:

1. Failure to appropriately monitor and manage the labor of Comaneche Turner and subsequent delivery of [MT];

2. Failure to recognize the non-reassuring fetal monitor strip and its significance; and

3. Failure to timely institute intrauterine resuscitative measures.

Dr. Sandate was not a Hospital employee and was not named as a defendant in the suit.

Turner timely served the Hospital with an expert report prepared by John Spurlock, M.D., a board-certified obstetrician and gynecologist, in which he opined that the Hospital and its nursing staff breached the standard of care in several ways and that those breaches proximately caused MT's injuries. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports . . . for each physician or health care provider against whom a liability claim is asserted. . . ."). The record indicates that the Hospital did not challenge the adequacy of that report. The parties then participated in discovery, including both written discovery and the depositions of Turner and several nurse employees who were present in the operating room during MT's delivery.

---

[1] The case is styled *Comaneche Turner, as Natural Parent and Next Friend of MT, a Minor v. Methodist Hospitals of Dallas d/b/a Methodist Dallas Medical Center.*

Shortly before the agreed scheduling order's deadline to join parties without leave of court, Turner filed a motion to extend that deadline.[2] Turner argued in the motion that "additional discovery is needed to fully identify all other potential parties," including "the depositions of the nurses and doctors involved in the labor and delivery of Mrs. Turner and MT." The Hospital opposed the motion on the ground that deposing health care providers before determining whether to add them as parties to an existing suit amounts to presuit depositions of those providers, which the Texas Medical Liability Act precludes until after an expert report is served. Turner responded that, despite the discovery that had already been conducted, she was still in the process of discovering "who did what and when" due to gaps in the medical records and poor recall by the deposed nurses. She contended that all the individuals she sought to depose were fact witnesses who were present during either the labor or the delivery (or both). The trial court granted the motion and extended the joinder deadline.

In the meantime, Turner attempted to schedule Dr. Sandate's deposition, but he would not agree to be deposed absent Turner's agreement not to file suit against him. Accordingly, Turner served a deposition subpoena and a subpoena duces tecum compelling Dr. Sandate to appear for an oral deposition and to produce the following documents:

1. Any and all documents, medical records, and/or hospital records in your possession, custody, and/or control containing reference to or mention of Comaneche Turner or MT in connection with the treatment and incidents in this case.

2. Any and all personal notes, diaries, journals [sic] entries, conversation [sic] and/or recordings on any type of medium including but not limited to

[2] Turner served an expert report on the Hospital on September 29, 2016, the day after the Hospital filed its answer. The agreed scheduling order was signed on November 21, 2016, and provided that no additional parties could be joined after May 2, 2017, except on motion for leave showing good cause. Turner filed her motion to extend the joinder deadline on April 28, 2017.

3

electronic and/or written materials which mention Plaintiffs, this cause of action, or the events and/or circumstances relating to Plaintiffs [sic] pre-natal care, labor and delivery, or any other facts, issues and/or opinions regarding this case.

3. Any notes, recordings, calendar entries, memoranda or any similar documents (whether paper or electronic) evidencing any meetings, conversations, discussions or any similar interaction with [the attorney representing the Hospital and her law firm], including and not limited to its lawyers and staff regarding Plaintiffs.

4. A current curriculum vitae of Jeffrey S. Sandate, MD.

5. Any and all documents reviewed by Jeffrey S. Sandate, MD in preparation for his deposition.

6. Any and all documents reviewed by Jeffrey S. Sandate, MD relating to this case in any manner (this excludes documents protected by the attorney-client privilege).

Dr. Sandate moved to quash the subpoenas and for a protective order, arguing that the deposition, though disguised as nonparty discovery, was effectively an attempt to investigate a potential health care liability claim against him and would violate the stay on presuit discovery imposed by the Medical Liability Act. Turner responded that Dr. Sandate was a fact witness in an existing suit and that his status as a health care provider did not "immunize him from providing non-party discovery." After a hearing, the trial court sustained Dr. Sandate's objection to paragraph 3 of the subpoena duces tecum,[3] which sought documents reflecting communications between him and the Hospital's attorneys, but otherwise denied the motion to quash. The court of appeals conditionally granted mandamus relief, holding that Turner may not depose Dr. Sandate before serving him with an expert report. 544 S.W.3d 9 (Tex. App.—Dallas 2017, orig. proceeding). Turner now seeks mandamus relief in this Court.

---

[3] Turner does not complain about that portion of the trial court's ruling.

4

## II. Discussion

### A. Standard of Review

Mandamus is an extraordinary remedy granted only when the relator shows that the trial court abused its discretion and that no adequate appellate remedy exists. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). We may review a court of appeals' issuance of a writ of mandamus for an abuse of discretion, but in doing so our focus remains on the trial court's order. *In re State*, 556 S.W.3d 821, 826 (Tex. 2018). Mandamus relief is appropriate when the trial court abuses its discretion by ordering discovery that the Medical Liability Act prohibits. *See In re Jorden*, 249 S.W.3d 416, 419–20, 424 (Tex. 2008).

### B. Analysis

In an effort to deter frivolous lawsuits against physicians and other health care providers, the Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each physician or provider against whom a health care liability claim is asserted.[4] TEX. CIV. PRAC. & REM. CODE § 74.351(a); *Baty v. Futrell*, 543 S.W.3d 689, 692 (Tex. 2018). In addition to being prepared by a qualified expert and timely served,[5] the report must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). A claimant's failure to

---

[4] A "health care liability claim" is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant." TEX. CIV. PRAC. & REM. CODE § 74.001(13).

[5] The report must be served on the applicable defendant "not later than the 120th day after the date [the] defendant's original answer is filed." *Id.* § 74.351(a).

comply with the Act's expert-report requirements with respect to a particular provider entitles that provider to dismissal of the claim with prejudice, along with attorney's fees and costs. *Id.* § 74.351(b).

In order to reduce litigation costs before compliant expert reports are served, the Act places limitations on discovery during that period. *Jorden*, 249 S.W.3d at 420. Specifically, the statute provides:

> Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:
>
> (1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;
>
> (2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and
>
> (3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

TEX. CIV. PRAC. & REM. CODE § 74.351(s).

In *Jorden*, we held that the Act's stay of discovery "in a health care liability claim" applies even to presuit depositions sought under Texas Rule of Civil Procedure 202. 249 S.W.3d at 418. Because the Act defines health care liability claim as a "cause of action," which in turn relates to underlying facts as opposed to a filed suit, we concluded that the statute "applies both before and after such a cause of action is filed." *Id.* at 421–22. We therefore held that "[t]o the extent a presuit deposition is intended to investigate a potential claim against a health-care provider, it is necessarily a 'health care liability claim' and falls within the coverage of section 74.351(s)." *Id.* at 422. We further held that section 74.351(s)(3)'s exception to the stay for

6

discovery from nonparties did not apply to the presuit depositions at issue in that case because the petitioner sought to depose health care providers who were listed in the petition as having an adverse interest in the potential suit. *Id.* We explained that, "by specifically referencing depositions of nonparties 'under Rule 205' rather than of parties under Rule 199, the statute makes an apparent distinction between those who are third parties to a dispute and those directly threatened by it." *Id.*[6]

The court of appeals in this case agreed with Dr. Sandate that, under our reasoning in *Jorden*, his deposition "would fall within the protection of section 74.351(s)." 544 S.W.3d at 14. The court held that the discovery stay applies before and after suit is filed and that, because Turner is seeking to investigate a health care liability claim against Dr. Sandate, he does not qualify as a "nonparty" whose deposition may be taken under Rule 205 "even though he has not yet been named in the lawsuit." *Id.* at 13–14. Turner responds that *Jorden*'s reasoning is limited to presuit depositions under Rule 202, that the existence of an expert report as to another provider distinguishes this case, and that Dr. Sandate's deposition qualifies on its face as nonparty discovery under Rule 205. We cannot agree entirely with either party.

Focusing solely on Turner's potential health care liability claim against Dr. Sandate—that is, any cause of action against him for departure from accepted standards of medical or health care that caused injury—section 74.351(s) stays discovery "in" that claim until Turner serves the required expert report, regardless of whether she has sued him. TEX. CIV. PRAC. & REM. CODE § 74.351(s); *Jorden*, 249 S.W.3d at 422. Although the Act excepts nonparty discovery from the stay, TEX. CIV. PRAC. & REM. CODE § 74.351(s)(3), and Dr. Sandate is not a named party to the

---

[6] We also noted that applying the nonparty exception in the Rule 202 context would result in the exception swallowing the rule. *Jorden*, 249 S.W.3d at 422.

7

pending suit in which his deposition is sought, we cannot hold that the exception applies with respect to the potential claim against him while faithfully applying *Jorden*. True, the issue in *Jorden* was whether the nonparty exception applies to presuit discovery under Rule 202 in the absence of a pending suit. 249 S.W.3d at 422. But our reason for holding that it does not apply—the Act distinguishes "those who are third parties to a dispute" from "those directly threatened by it"—applies equally here.[7] *Id.* Construing the statute as a whole and in accordance with *Jorden*, we hold that when discovery is sought from a health care provider on whom no expert report has been served and in the context of a potential health care liability claim against that provider, the nonparty exception does not apply even if the discovery is requested in a pending lawsuit in which the provider is not a defendant.

But that conclusion cannot and does not end our inquiry for two reasons. First, Turner has a pending health care liability claim against a different provider, the Hospital, arising out of the injuries allegedly caused by the care she received during her labor and delivery. Second, and in contrast with *Jorden*, she has already served the required expert report on the Hospital and has thus crossed the threshold imposed by the Legislature to weed out frivolous claims, at least as to that provider. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013) ("The expert report requirement is a threshold mechanism to dispose of claims lacking merit . . . ."). Thus, we need not examine whether any exceptions to the discovery stay apply with respect to Turner's claim against the Hospital because discovery "in" that claim is no longer stayed at all. TEX. CIV.

---

[7] As Turner correctly notes, we held in *Zanchi v. Lane* that service of an expert report on a named defendant qualifies as service of the report on a "party" under section 74.351(a), even if the defendant has not yet been served with citation. 408 S.W.3d 373, 375 (Tex. 2013). But we did not purport in *Zanchi* to distinguish between a party and a nonparty for all purposes and regardless of context. And we certainly did not purport to overrule *Jorden* or retreat from its reasoning.

8

PRAC. & REM. CODE § 74.351(s) (staying all discovery, with certain exceptions, "in a health care liability claim" until the expert report is served). Viewed in this context, section 74.351(s) allows Turner to obtain discovery from Dr. Sandate if it qualifies as discovery in Turner's claim against the Hospital. Unquestionably it does.

Generally, "a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). Further, "[i]t is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* It cannot reasonably be disputed that deposing Turner's treating obstetrician during her labor and delivery could (and likely would) lead to the discovery of admissible evidence regarding her claims against the Hospital arising out of the same course of treatment. We see nothing in the Act indicating that the Legislature intended to deprive a claimant of legitimate, and possibly crucial, discovery of information in aid of a health care liability claim for which a statutorily compliant expert report has been served. We therefore hold that the Act does not insulate Dr. Sandate from being deposed or producing documents in this case.[8]

That said, we cannot agree that the Act places no limits on the scope of the permissible discovery. As a practical matter in a case like this, information sought from Dr. Sandate will often be relevant to both Turner's health care liability claims against the Hospital and any potential claims against Dr. Sandate. Because the claims generally arise from one overarching

---

[8] Dr. Sandate argues that Turner has waived any error with respect to the court of appeals' determination that the trial court abused its discretion in requiring Dr. Sandate to produce documents. We disagree. Turner broadly argues in this Court that "discovery may be had on Dr. Sandate" and that the trial court's order denying the motion to quash and for a protective order should be reinstated. That encompasses the portion of the order requiring Dr. Sandate to produce documents at his deposition.

9

incident—Turner's labor and delivery of MT—the facts underlying those claims are largely intertwined. Thus, to the extent discovery requests or deposition questions are reasonably calculated to discover information regarding Turner's claims against the Hospital, it is no objection that they could also lead to information regarding potential claims against Dr. Sandate. In other words, questions or requests that are reasonably calculated to lead to the discovery of admissible evidence in both claims are permissible under the Act. But we cannot foreclose the possibility that a question or request posed to Dr. Sandate could have such a tenuous connection to the claims for which an expert report has been served that the Act would prohibit it even if the rules of civil procedure would not.

The Act's definitions are useful in evaluating a question's or request's propriety. Again, a health care liability claim is "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant." TEX. CIV. PRAC. & REM. CODE § 74.001(13). Turner's cause of action against the Hospital calls into question the conduct of nurses and other Hospital employees during her labor and delivery, which conduct allegedly fell below the accepted standard of care. Dr. Sandate may be deposed as a fact witness with respect to that cause of action, and his testimony about his recollection of the circumstances surrounding the employees' actions and omissions is decidedly relevant, including his own conduct as it relates to those actions. But Turner may not engage in a fishing expedition by requesting information from Dr. Sandate that sheds no light on what the Hospital's employees did and why. With these limitations, discovery may proceed.

### III. Conclusion

Because the court of appeals erroneously held that the Medical Liability Act categorically prohibits Turner from deposing or obtaining documents from Dr. Sandate, we conditionally grant Turner's petition for writ of mandamus and order the court of appeals to vacate its order. The trial court did not abuse its discretion in denying Dr. Sandate's motion to quash the deposition subpoena. However, in conducting Dr. Sandate's deposition and seeking relief from the trial court regarding disagreements over the propriety of specific questions, the parties are governed by the parameters set forth in this opinion. With respect to the subpoena duces tecum, the parties may present argument to the trial court as to the permissible scope of document production in light of those same parameters. A writ will issue only if the court of appeals does not comply.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** December 20, 2019

11