**Affirmed and Opinion filed November 23, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00266-CV

---

## DR. HARVINDER BEDI AND HEALTHCARE SPECIALISTS, LLP D/B/A NEONATAL CONSULTANTS, LLP, Appellants

### V.

## REBEKAH CORNETT AND KALUM CORNETT INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES OF THE ESTATE OF DELANEY CORNETT, Appellees

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-52912**

---

### OPINION

Two parents brought wrongful death and survival claims after their infant daughter died in a hospital's neonatal intensive care unit (NICU). The parents sued the healthcare providers who provided care to their daughter. The hospital where the child was born filed a separate appeal, and a panel of this court held that the parents' amended expert report failed to satisfy the statutory requirements as to

breach of the applicable standard of care for the hospital.[1] In this interlocutory appeal, we consider whether the amended expert report meets the statutory requirements as to the applicable standard of care, breach of the standard of care, and causation for the doctors who provided healthcare to the child. Concluding that it does, we affirm the trial court's denial of the doctors' motion to dismiss.

## *Background*

After Delaney Cornett and her twin sister were born prematurely, they were placed in the NICU. Their parents allege that Delaney was placed on a breathing machine when she should have been placed on antibiotics for an infection. Four days after Delaney was placed on the breathing machine, a culture was taken, and she was given antibiotics. The next day, Delaney passed away. Delaney's purported cause of death was septic shock caused by the infection.

Parents Rebekah and Kalum Cornett, individually and as personal representatives of Delaney's estate, filed suit, asserting wrongful death and survival claims. The Cornetts allege that Delaney's doctors, Drs. Harvinder Bedi and Sandip K. Patel and Healthcare Specialists, LLP d/b/a Neonatal Consultants, LLP, were negligent in failing to properly monitor, evaluate, and treat Delaney's condition in a timely manner. The Cornetts served the defendants with an expert report authored by Dr. Dale Bull. After the hospital objected to the report and filed a motion to dismiss, the trial court granted the Cornett's motion for a thirty-day extension to serve an amended report and denied the motion to dismiss. The Cornetts served an amended expert report, to which the doctors objected. Dr. Bedi and Healthcare Specialists then filed a motion to dismiss.[2] The trial court denied

---

[1] *See C-HCA, Inc. v. Cornett*, No. 14-19-00580-CV, 2021 WL 4736932, at *1 (Tex. App.—Houston [14th Dist.] Oct. 12, 2021, no pet. h.) (citing Tex. Civ. Prac. & Rem. Code § 74.351).

[2] Dr. Patel did not join the motion to dismiss and is not a party to this appeal.

2

the motion.

## *Discussion*

In one issue, Dr. Bedi and Healthcare Specialists contend that the trial court abused its discretion in denying their motion to dismiss. They argue that the amended expert report is insufficient as to the applicable standard of care, breach of that standard, and causation.

Under chapter 74 of the Civil Practice and Remedies Code, a claimant in a healthcare liability claim must serve the defendant or the defendant's attorney one or more expert reports addressing liability and causation for each physician or healthcare provider against whom a liability claim is asserted. Act of May 24, 2013, 83rd Leg., R.S., ch. 870, §§ 2, 3(b), 4, 2013 Tex. Sess. Law Serv. Ch. 870 (current version codified at Tex. Civ. Prac. & Rem. Code § 74.351(a)); Tex. Civ. Prac. & Rem. Code § 74.351(j).[3] "Expert report" is defined as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). The trial court is required to grant a motion challenging the adequacy of an expert report if it is not an objective good faith effort to comply with the statutory definition of an expert report. *Id.* § 34.351(*l*), (r)(6).

The trial court's determination regarding the adequacy of an expert report is

---

[3] Subsection 74.351(a) was amended effective September 1, 2021. Act of Apr. 19, 2021, 87th Leg., R.S., ch. 167, §§ 2-5, 2021 Tex. Sess. Law Serv. Ch. 167 (eff. Sept. 1, 2021). We cite the prior version of the statute only as to subsections that were amended after this case was filed.

limited to its four corners. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). The expert does not need to "marshal all the plaintiff's proof" in the report, but the report must include the expert's opinion on each of the three main elements: standard of care, breach, and causation. *Id*. Experts must explain the basis for their statements in the report and link their conclusions to the facts. *Id*. The report must contain sufficient information to inform the defendant of the specific conduct called into question and provide a basis for the trial court to conclude the claims have merit. *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). Omission of any of the statutory elements prevents the report from being a good faith effort. *Jelinek*, 328 S.W.3d at 539. A report that only states the expert's conclusions about the standard of care, breach, and causation does not meet the statutory requirements. *Id*. But the purpose of the expert report requirement is to weed out frivolous healthcare liability claims in the early stages of litigation, not to dispose of potentially meritorious claims. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012). Accordingly, the report may be informal in that the information need not fulfill the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001); *Harvey v. Kindred Healthcare Operating, Inc.*, 578 S.W.3d 638, 644 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

We review a trial court's decision as to the adequacy of an expert report for an abuse of discretion. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (per curiam); *Harvey*, 578 S.W.3d at 644. Although this court may not substitute its judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying

the law to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). In the absence of findings of fact or conclusions of law, we uphold a trial court's ruling on a motion to dismiss on any theory supported by the record and infer any necessary findings of fact to support the ruling. *Harvey*, 578 S.W.3d at 644 (citing *Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011)).

A report that satisfies three requirements is sufficient: it must fairly summarize the applicable standard of care, it must explain how a physician or healthcare provider failed to meet that standard, and it must establish the causal relationship between the failure and the harm alleged. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). A report that meets these requirements, even only as to one theory, entitles the claimant to proceed with a suit against the healthcare provider. *Id.* However, a report that merely states the expert's conclusions about the standard of care, breach, and causation does not meet these requirements. *Palacios*, 46 S.W.3d at 879; *Harvey*, 578 S.W.3d at 649. We review the sufficiency of the report by considering the expert's opinions in the context of the entire report. *Harvey*, 578 S.W.3d at 648. We do not take statements in isolation. *Id.* (citing *Van Ness*, 461 S.W.3d at 144).

With these standards in mind, we turn to Dr. Bull's report. Bull noted the following treatment history for Delaney. She was born prematurely at 25 weeks and transferred to the NICU. She was treated for respiratory distress syndrome, apnea, patent ductus arteriosus, grade 1 intraventricular hemorrhage on the right, slow GI mobility, pulmonary edema, hyperbilirubinemia, and anemia requiring blood transfusions. Approximately three weeks after she was born, Delaney had an abnormal blood gas test showing a high carbon dioxide level, at which time she was placed on a ventilator. Her records do not show that testing was done at that time to determine whether she had an infection. She died seven days later. Her

cause of death was "septic shock caused by a pseudomonas infection."

**Standard of Care Sufficiently Detailed**. In the amended expert report, Bull opined,

> The standard of care for a doctor in the neonatal intensive care [unit] is to find the cause of the abnormal carbon dioxide level. The level of carbon dioxide that Delaney had on that day is almost always indicative of an infection in an infant such as Delaney. Delaney should have been started on antibiotics immediately.

Bedi and Healthcare Specialists insist that these statements are insufficient as a matter of law to properly articulate the standard of care because they are conclusory and do not properly link the facts to the standard of care. Specifically, Bedi and Healthcare Specialists assert that Bull inappropriately (1) concludes "without reference to the course of Delaney's treatment" that Bedi did not know the cause of Delaney's high carbon dioxide level, and (2) misstates the standard of care by indicating that such a carbon dioxide level "always indicates infection in a premature infant, especially one like Delaney who . . . had suffered from multiple pulmonary complications." Neither of these contentions are accurate.

First, considering Bull's opinion in the context of the entire report, we note he opined that Delaney's cause of death was "septic shock caused by a pseudomonas infection," so his opinion that the standard of care required her doctors to "find the cause of the abnormal carbon dioxide level" and immediately start her on antibiotics is informed by the observation that Delaney had an actual infection that resulted in septic shock. Bull's second statement, that "[t]he level of carbon dioxide that Delaney had on that day is almost always indicative of an infection in an infant such as Delaney" is likewise informed by that information. Moreover, Bull did not say that such a high carbon dioxide level is *always* caused by an infection in a premature infant—he said instead the standard of care requires

6

a determination of whether that level is caused by an infection because that would *almost always* be true in a premature infant like Delaney. This distinction is important because it emphasizes the need for determining the cause of the carbon dioxide level and beginning antibiotics immediately.

Bedi and Healthcare Specialists urge us to consider Delaney's medical records. They complain that Bull "omits reference to the antibiotics Delaney received in the NICU before or after" the abnormal blood gas test showing her high carbon dioxide level. According to Bedi and Healthcare Specialists, Bull's omission of this information means the standard of care articulated by Bull is "factually incorrect." Bedi and Healthcare Specialists cite a case in which the supreme court noted that "the state of the records can be taken into account in deciding whether a report represents a good faith effort to comply with the statute." *In re Jorden*, 249 S.W.3d 416, 423 (Tex. 2008).

At issue in that case was whether chapter 74 bars presuit depositions authorized by Texas Rule of Civil Procedure 202. *Id*. at 418. The mandamus petitioner argued that banning presuit depositions in chapter 74 cases could cause healthcare providers to intentionally make inadequate records "so claimants cannot prepare expert reports from them." *Id*. at 423. In disregarding this argument, the high court noted that the state of the records can be considered, i.e., for accuracy and completeness, in deciding whether an expert report represents a good faith effort to comply with the statute. *Id*. We take this to mean the expert could note in the report that the records were inaccurate or incomplete, and the trial court could take that into consideration in determining the sufficiency of the expert report. *See id*. That is not the issue in this appeal and does not change the fact that our determination regarding the adequacy of the expert report is limited to its four corners. *See Jelinek*, 328 S.W.3d at 539. Clearly, Bull was required to review the

7

medical records in formulating his opinion. His report says that he did so.[4]

We conclude that the report is sufficiently detailed as to the standard of care. When read as a whole, the report reveals that the statements regarding standard of care go beyond general, conclusory statements. *See Harvey*, 578 S.W.3d at 651. Bull clearly articulated that NICU doctors who encounter a premature infant with carbon dioxide levels as high as Delaney's should look for the cause and administer antibiotics immediately, especially given the fact that such a high level in a premature infant is "almost always indicative of an infection." Accordingly, Bull provided sufficient detail to give Bedi and Healthcare Specialists notice of what the standard of care is. *See id*.

**Breach of Standard of Care Adequately Explained**. Bull opined that after the blood gas test revealed Delaney's high carbon dioxide level, doctors breached the standard of care by failing "to find the cause of the abnormal carbon dioxide level and start antibiotics *on that day*." (Emphasis added.) According to Bedi and Healthcare Specialists, Bull improperly viewed "a single symptom (the high CO2 level . . .) in a vacuum, without relating it to the infant's condition or any treatment she received before or after that point in time as critical and dispositive."

Although Bull did not discuss how Delaney's other conditions might have affected her carbon dioxide level, his report put Bedi and Healthcare Specialists on notice of how Bull believes they breached their duties. *See id*. at 652. As mentioned, Bull opined that Delaney died of septic shock caused by a pseudomonas infection, not from one of the other conditions listed on the report. He also opined that Delaney's high carbon dioxide level would almost always

---

[4] We also note that Bedi and Healthcare Specialists' contention that Delaney received antibiotics "before or after" the abnormal blood gas test does not address Bull's opinion that Delaney should have been put on antibiotics immediately.

8

indicate an infection in a premature baby. Bull explained that in his opinion, Delaney's doctors breached the standard of care in two ways: by failing to find the cause of the abnormal carbon dioxide level and failing to put Delaney on antibiotics that day. Given Bull's opinion regarding the likelihood that Delaney had an infection, we conclude the report adequately explains how the doctors purportedly failed to meet the standard of care.[5] *See id*. at 652–53.

**Causal Relationship Established between Alleged Failure and Harm**. Bull opined that the failure "to find the cause of the abnormal carbon dioxide level and start antibiotics" on the day of the abnormal blood gas test "contributed to Delaney's untimely death from infection." Bedi and Healthcare Specialists contend that Bull's report is conclusory on causation because "Bull fails to address the treatment Dr. Bedi provided Delaney either before or after that particular date, or her physical condition."

An expert report must include a fair summary of the expert's opinions regarding the causal relationship between the failure of the healthcare provider to provide care in accord with the pertinent standard of care and the injury, harm, or damages claimed. *Id*. at 653 (citing Tex. Civ. Prac. & Rem. Code § 74.351(r)(6)). Under chapter 74, an expert must explain, based on the facts set forth in the report, how and why a healthcare provider's breach of the standard of care caused the injury. *Id*. A bare expert opinion that the breach caused the injury is not enough. *Id*.

---

[5] As noted, this court previously held that Bull failed to specify in his report how the hospital breached the standard of care that Bull opined was applicable to the hospital. *C-HCA*, 2021 WL 4736932, at *4. However, we did not address Bull's opinion regarding the standard of care applicable to the doctors or their purported breach of the standard. *See id*. at *4-5. We held that the Cornetts did not plead that the hospital was vicariously liable for the alleged negligence of the doctors acting as agents for the hospital. *Id*. at *5. We presumed the "report contains sufficient information to inform Dr. Bedi and Dr. Patel of the specific conduct of each doctor called into question," but noted, "that . . . does not mean . . . the amended report contains sufficient information to inform the Hospital of the specific conduct of the Hospital called into question." *Id*.

A plaintiff who cannot prove that her injury was proximately caused by the defendant's breach of the standard of care does not have a meritorious claim. *Id*. Proximate cause includes the elements of foreseeability and cause in fact. *Id*. To determine whether the expert's causation conclusions are detailed enough, as with standard of care and breach, we read the expert's conclusions on causation in the context of the entire report, not piecemeal or in a vacuum. *Id*. In addition, a plaintiff is not required to provide an expert report that anticipates and rebuts all possible defensive theories that ultimately may be presented at trial. *First Nobilis Surgical Ctr., LLC v. Phillips*, No. 14-18-00772-CV, 2019 WL 5617625, at \*12 (Tex. App.—Houston [14th Dist.] Oct. 31, 2019, no pet.) (mem. op.).

Bull opined that Delaney had a high carbon dioxide level caused by an infection. The abnormal blood gas test revealed that level. According to Bull, failures to ascertain the cause of the abnormal test and to put Delaney on antibiotics immediately "contributed to her untimely death from infection." Bull also stated that Delaney's "records do not indicate that any testing was done to determine whether Delaney had an infection," Delaney's "cause of death was septic shock caused by pseudomonas infection," and "[i]n the case of patients like Delaney, contraction of infections like pseudomonas often leads to death." We conclude that Bull fairly summarized the causal relationship between the purported failures of Delaney's doctors—to find the cause of her high carbon dioxide level and immediately start antibiotics—and her untimely death from infection. *See Harvey*, 578 S.W.3d at 653–54 (holding expert fairly summarized causal relationship between failure to administer daily x-rays and plaintiff's injuries); *see also Peabody v. Manchac*, 567 S.W.3d 814, 835-36 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding expert opinion on causation was adequate when expert opined, among other things, that patient would not have died if he had been

10

admitted to hospital and closely monitored on "cardiac telemetry monitoring" for heart valve insufficiencies); *Gonzalez v. Padilla*, 485 S.W.3d 236, 252-53 (Tex. App.—El Paso 2016, no pet.) (holding expert report was adequate when expert opined that the "failure to timely establish an appropriate treatment plan which provided for infection prevention" caused patient to develop infection resulting in amputation of his leg).

Bedi and Healthcare Specialists contend, however, that Bull was supposed to rule out "other conditions from which [Delaney] was suffering [that] could have explained the high CO2 level." But that is not the standard. Bull was not required to anticipate and rebut all possible defensive theories. *See Phillips*, 2019 WL 5617625, at *12. Nor was he required to show that his opinion "was superior to the view that the other conditions from which she suffered . . . explained the high CO2 level," as Bedi and Healthcare Specialists assert. Bull observed that such a high carbon dioxide level in an infant like Delaney is almost always caused by an infection. He also observed that Delaney had an actual infection and died from septic shock caused by that infection. His conclusion regarding causation—that the failures to immediately test for the cause of the carbon dioxide level, most likely an infection, and administer antibiotics contributed to Delaney's untimely death—establishes a causal connection between the failure and the harm alleged. *See Potts*, 392 S.W.3d at 630. Meeting this requirement as to one theory allows the claimant to proceed with the lawsuit. *Id.* The legislature enacted the expert report requirement to deter frivolous claims, not to require a plaintiff to marshal all the proof necessary to establish causation at trial. *Id.* at 631; *see also Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

Bedi and Healthcare Specialists also insist that to agree with the trial court that Bull's expert report was sufficient as to causation, we would have to

impermissibly infer that (1) Bedi did not know the cause of Delaney's high carbon dioxide level, (2) Delaney's pulmonary condition did not explain the level, and (3) Delaney had other signs of infection that should have alerted a reasonable physician that antibiotics were required. But the report does not require any of these inferences. As to the first point, Bull opined *both* that a reasonable doctor should have discovered the cause of the carbon dioxide level *and* should have administered antibiotics immediately. His opinion is informed by the observation that Delaney actually had an infection, so regardless of whether Bedi knew the cause, under Bull's analysis, Bedi should have administered antibiotics immediately. The report does not require us to make any inferences regarding Bedi's knowledge. Second, Bull opined that such a high carbon dioxide level is *almost* always consistent with an infection in a premature infant like Delaney. It bears repeating that this is not the same thing as a conclusory statement that such a level is *always* caused by an infection. Bull was not required to rule out all possible theories of causation at this juncture. *See Potts*, 392 S.W.3d at 630. Third, it is unclear why we would be required to infer that Delaney had other signs of infection when Bull opined that the abnormal blood gas test should have alerted the doctors to the very real possibility that Delaney had an infection.

Based on the foregoing, we conclude the trial court acted within its discretion in concluding the expert report was sufficient to meet the minimum statutory requirements to establish the causal relationship between the failure and the harm alleged. *See Harvey*, 578 S.W.3d at 653–54; *see also Phillips*, 2019 WL 5617625, at *15. We overrule Bedi and Healthcare Specialists' sole appellate issue.

### *Conclusion*

The trial court did not abuse its discretion in determining that the amended

12

expert report is an objective good faith effort to comply with the statutory requirements for an expert report and in denying Bedi and Healthcare Specialists' motion to dismiss. Accordingly, we affirm the order of the trial court denying the motion to dismiss.


/s/     Frances Bourliot
Justice


Panel consists of Justices Wise, Bourliot, and Zimmerer.

13