# Supreme Court of Texas

No. 20-0694

In re LCS SP, LLC d/b/a Signature Pointe Senior Living Community, Aspect LCS Leasing SP, LLC, and LCS Dallas Operations, LLC,

*Relators*

On Petition for Writ of Mandamus

**Argued December 1, 2021**

JUSTICE BLAND delivered the opinion of the Court.

In this case, we examine the scope of discovery that the Texas Medical Liability Act permits before the plaintiff serves the expert report that the Act requires. The trial court declined to compel pre-report discovery of a nursing facility's general policies and procedures. The court of appeals granted mandamus relief, requiring the trial court to order the facility to produce these policies before the plaintiff had served the facility with an expert report. Because a facility's general policies and procedures fall outside the narrow scope of pre-report discovery permitted in medical-liability cases, we grant relief.

**I**

Donna Smith was a resident at the Signature Pointe Senior Living Community for about three months in 2019. Signature Pointe is a skilled nursing facility owned by LCS SP, LLC. Donna Smith's husband, Kenneth Smith, removed her from the facility and sued it on her behalf. He alleges that his wife fell multiple times while in LCS's care, fracturing her ankle, shoulder, and hip.

Chapter 74 of the Civil Practice and Remedies Code governs claims against health-care providers, including LCS.[1] Pertinent here, Section 74.351(s) stays discovery in health-care liability cases until the plaintiff serves the defendant with an expert report supporting the plaintiff's claim, unless the discovery seeks information that is "related to the patient's health care":[2]

> Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care . . . .

A Chapter 74 expert report is intended to separate potentially meritorious health-care liability claims from frivolous ones.[3] Thus, the report must include a qualified expert's opinions about the "applicable standards of care, the manner in which the care rendered by the physician or health-care provider failed to meet the standards, and the

---

[1] Tex. Civ. Prac. & Rem. Code § 74.001(12)(A).

[2] *Id.* § 74.351(s).

[3] *In re Jorden*, 249 S.W.3d 416, 420 (Tex. 2008).

2

causal relationship between that failure and the injury, harm, or damages claimed."[4] The failure to serve a defendant with an expert report within 120 days of the date the defendant files its answer entitles the health-care provider to seek dismissal of the claim and an award of attorney's fees and costs.[5]

Before Smith served LCS with an expert report, he requested LCS's general operating policies and procedures for the five years before he filed suit.[6] The Texas Health and Safety Code and the Texas Administrative Code require LCS to make some policies and procedures publicly available.[7] Relying on the stay of discovery in Section 74.351(s), however, LCS objected, arguing that the requested documents were not "related to the patient's health care" under Chapter 74's pre-report discovery limitation. Smith moved to compel the discovery. The trial

---

[4] Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

[5] *Id.* § 74.351(b).

[6] Smith requested production of (1) "all operating policies and procedures required by [the then-current Texas Administration Code] and Tex. Health & Safety Code § 242.404, in effect January 1, 2015 to present," (2) "all written policies which govern the nursing care and related medical or other services provided," (3) "all policies and procedures established and implemented by the [facility's] governing body," and (4) "the policy to identity [sic], assess, and develop strategies to control risk of injury to residents and nurses associated with the lifting, transferring, reposition, or moving of a resident . . . ."

[7] Tex. Health & Safety Code § 242.404(a), (b) ("Each institution shall comply with the standards adopted under this subchapter and shall develop written operating policies to implement those standards. The policies and procedures must be available . . . to the public."); *see also* 26 Tex. Admin. Code §§ 554.1917(e), 554.1920, 554.1922 (describing the contents of such policies).

court denied Smith's motion, delaying this discovery until after Smith served LCS with the expert report the statute requires.

Smith petitioned the court of appeals for mandamus relief from the trial court's adverse ruling. At the outset, the court of appeals stayed the expert-report deadline.[8] The court then conditionally granted relief, holding that LCS's policies and procedures "are relevant to assessing the appropriate standard of care that should have been given to Mrs. Smith," and thus Smith's discovery of them is not stayed under Section 74.351(s).[9] LCS petitioned this Court for mandamus relief from the court of appeals' ruling.

## II

### A

Mandamus relief is appropriate in health-care liability cases when a trial court orders discovery that the Act prohibits.[10] In reviewing an appellate court's grant of mandamus relief, "our focus remains on the trial court's order."[11] We determine whether the trial court abused its discretion and, if so, whether the appellate court correctly determined that no adequate appellate remedy exists.[12]

---

[8] *In re Smith on Behalf of Smith*, 634 S.W.3d 108, 111 (Tex. App.—Dallas 2020).

[9] *Id.* at 114. The trial court complied with the court of appeals' ruling, vacated its earlier order, and ordered the discovery produced.

[10] *In re Turner*, 591 S.W.3d 121, 124 (Tex. 2019).

[11] *Id.*

[12] *See City of San Antonio v. Fourth Ct. of Appeals*, 820 S.W.2d 762, 764 (Tex. 1991) ("In reviewing the court of appeals' decision to grant mandamus,

**B**

In *In re Jorden*, we observed that Section 74.351(s) places "strict limits" on pre-report discovery.[13] In that case, we held that these limitations forbid pre-suit depositions under Texas Rule of Civil Procedure 202 in health-care liability suits.[14] While acknowledging the difficulties presented in preparing an expert report based on limited discovery, our Court nonetheless concluded that the Legislature had limited discovery because the costs associated with discovery in the pursuit of meritless claims are prohibitive.[15] "These competing concerns were once left to the discretion of each trial judge," we noted, but "the Legislature has withdrawn that discretion after finding that the costs of unrestricted discovery [were] being afforded too little weight."[16] Accordingly, Section 74.351(s) stays most relevant discovery until the plaintiff serves an expert report.

Despite Section 74.351(s)'s "strict limits," Smith argues that the trial court abused its discretion in declining to compel production of the facility's policies and procedures for three reasons. First, Smith argues that LCS must make at least some policies and procedures publicly available. Next, Smith contends that the exception from the stay for documents "related to the patient's health care" should be read

---

therefore, this court must determine for itself whether the trial court abused its discretion.").

[13] *In re Jorden*, 249 S.W.3d at 420.

[14] *Id.* at 424.

[15] *Id.*

[16] *Id.*

5

expansively, as the phrase "related to" frequently is in other contexts. Finally, citing our decision in *Diversicare General Partner v. Rubio*,[17] Smith observes that a facility's policies and procedures undisputedly are discoverable in health-care liability cases against a nursing facility.

The trial court's refusal to compel production of publicly available documents was not an abuse of discretion. Generally, a court "should" limit discovery if what is sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive."[18] Requiring a party to produce documents has an associated cost. If the parties can reduce this cost by obtaining the requested material through another source, then that is a reason *not* to compel discovery; it does not demonstrate an abuse of discretion. In this case, the Health and Safety Code and the Administrative Code provide that at least some policies and procedures "must be made available for review upon request . . . to the public."[19] Smith concedes that he did not obtain LCS's publicly available materials or limit his requests to them. The trial court's refusal to compel production on this basis therefore was not "without reference to any guiding rules and principles."[20]

---

[17] 185 S.W.3d 842 (Tex. 2005).

[18] Tex. R. Civ. P. 192.4(a).

[19] 26 Tex. Admin. Code § 554.1920(a); Tex. Health & Safety Code § 242.404.

[20] *In re Nat. Lloyds Ins. Co.*, 507 S.W.3d 219, 226 (Tex. 2016) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We do not disagree that LCS has an obligation to make its current policies available to the public, including Smith. The trial court did not abuse its discretion in refusing to compel production based on Smith's broader, more general, requests.

To his second point, Smith correctly observes that we generally read the phrase "related to" broadly,[21] and he argues that we should do so for the phrase "or other documents or tangible things, related to the patient's health care." As the Court made clear in *In re Jorden*, however, the Legislature intended Section 74.351(s) to limit pre-report discovery.[22] Though the rules of civil procedure ordinarily provide for broad discovery related to a party's claims,[23] the Legislature has supplanted this traditionally liberal standard with a narrower one: only information "related to *the patient's* health care" is discoverable.[24]

Given this context, "related to" cannot be read so broadly as to swallow the very discovery limitation that Section 74.351(s) imposes. The exception identifies the patient's "medical or hospital records" as permissible forms of pre-report discovery. The "other documents" to which the exception refers must relate "to the patient's health care" in a manner similar to the statutorily approved "medical or hospital records."[25] A facility's general operating policies and procedures do not.

---

[21] *See, e.g.*, *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900–01 (Tex. 2017) (interpreting "related to" in a statute as not requiring more than a tangential relationship); *Colorado v. Tyco Valves & Controls*, 432 S.W.3d 885, 890 (Tex. 2014) (applying ERISA's "relate to" language broadly).

[22] *In re Jorden*, 249 S.W.3d at 420.

[23] *See* Tex. R. Civ. P. 192.3(a) ("[A] party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action . . . .").

[24] Tex. Civ. Prac. & Rem. Code § 74.351(s) (emphasis added).

[25] *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441–42 (Tex. 2011) (noting that, under the *noscitur a sociis* doctrine, we interpret similar words in a statute in a similar manner); *City of Houston v. Bates*, 406

Smith observes that a facility policy affects every patient, and thus necessarily must relate to a particular patient's care. To interpret the exception to Section 74.351(s)'s discovery limitation in that manner, however, renders the Legislature's stay of discovery meaningless, resulting in no practical difference between pre-report discovery and permissible discovery during the suit. Any information related to the plaintiff's claim—not just patient-specific health care—would be discoverable. Such an interpretation undermines the Legislature's effort to curb the costs of defending against meritless suits by permitting discovery to proceed in the ordinary course only when an expert report demonstrates that a suit has potential merit.

Smith similarly argues, and the court of appeals agreed, that a facility's policies and procedures reflect the appropriate standard of care, and he therefore should obtain them before he serves the required report. Such an interpretation—that all relevant information that informs the standard of care is discoverable before providing a report—similarly removes the meaningful limit on pre-report discovery that the statute imposes. The standard of care in health-care liability cases is that of an ordinarily prudent health-care provider, which an expert can adduce without delving into a particular facility's policies, absent their manifestation in a patient's medical records or as otherwise reflected in a patient's specific care.[26] Information related specifically to the subject

S.W.3d 539, 545 (Tex. 2013) (interpreting "any other authorized leave" as limited by six enumerated types of leave preceding the phrase in the statute).

[26] *See Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001) ("The standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances.").

8

patient's health care—the patient's chart and medical records—fills factual gaps necessary to properly proffer an opinion as to what went wrong in a specific case. The Act entitles a claimant to a copy of the patient's medical records at the outset; the discovery limitation contemplates that the plaintiff receive similar information housed outside the patient's medical records when it specifically relates to the patient in question, but not otherwise.[27]

To that end, Section 74.351(s)'s exception—permitting a claimant to obtain information "related to *the patient's* health care"—assists the expert in determining the facts and circumstances that support the conclusion that a breach of the generally applicable standard of care occurred and that the breach caused the claimant's injury.[28] It is not an exception that lifts the very stay of discovery that the provision creates.

Finally, Smith relies on our decision in *Diversicare General Partner v. Rubio* to contend that LCS's policies and procedures are discoverable before serving an expert report. The question in *Diversicare* was whether a patient's claims of sexual assault by another patient at a nursing home were health-care liability claims under the predecessor to

---

[27] Tex. Civ. Prac. & Rem. Code § 74.051(d) ("All parties shall be entitled to obtain complete and unaltered copies of the patient's medical records from any other party within 45 days from the date of receipt of a written request for such records . . . .").

[28] *Id.* § 74.351(r)(6) ("'Expert report' means a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.").

the current Act.[29] We held that they were, noting that the nursing home's "training and staffing policies . . . are integral components of [its] rendition of health care services to [the plaintiff]."[30]

We had no occasion to address the Act's stay of discovery in *Diversicare*. Though policies regarding staffing and training are relevant to a claim that a patient committed sexual assault on another patient in a facility's care, Section 74.351(s) nevertheless limits the plaintiff's discovery of them before serving a report, unless the information requested expressly refers to the subject patient. While operating policies and procedures can be an "integral component[] of [a facility's] rendition of health care services,"[31] they do not specifically relate to a particular "patient's health care," like medical or hospital records, so as to except them from the stay of discovery before a report is served.[32] Accordingly, we hold that the court of appeals erred in requiring the trial court to compel production of LCS's operating policies and procedures before Smith served his expert report.

## III

The court of appeals stayed the proceedings in this case, including the expert-report deadline, while it considered Smith's request for mandamus relief. After it ruled, the court of appeals continued its stay of the expert-report deadline for an additional forty-five days after the trial court complied with the appellate court's order granting Smith's

---

[29] 185 S.W.3d at 845–46.

[30] *Id.* at 850.

[31] *Id.*

[32] Tex. Civ. Prac. & Rem. Code § 74.351(s).

10

requested relief. We, in turn, stayed all proceedings in the trial court as we considered the merits of this discovery dispute.[33]

LCS argues that the court of appeals abused its discretion by staying trial-court proceedings and extending the expert-report deadline while it considered Smith's request for mandamus relief. Relying on Section 74.351(b), which provides a mechanism for dismissal of the case when a report is not filed within the statutory deadline, LCS contends that appellate courts lack the authority to extend the expert-report deadline for cases in which the claimant fails to file a report.[34] Smith responds that the court of appeals properly exercised its authority under Texas Rule of Appellate Procedure 52.10, which permits an appellate court to stay trial-court proceedings to preserve its jurisdiction and the rights of the parties while the appellate court considers a request for mandamus relief.

Rule 52.10(b) authorizes appellate courts to grant temporary "just relief" pending the court's action on a petition for writ of mandamus:

> Grant of Temporary Relief. The court—on motion of any party or on its own initiative—may without notice grant any just relief pending the court's action on the petition. As a condition of granting temporary relief, the court may require a bond to protect the parties who will be affected by the relief. Unless vacated or modified, an order granting

---

[33] Order at 1, *In re LCS SP, LLC*, No. 20-0694 (Tex. Sept. 8, 2020) ("All trial court proceedings . . . are stayed pending further order of this Court.").

[34] *See* Tex. Civ. Prac. & Rem. Code § 74.351(b) ("If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that: . . . dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.").

11

temporary relief is effective until the case is finally decided.[35]

Under that rule, the court of appeals' stay of the underlying proceedings in this case—including the expert-report deadline—constituted a proper exercise of the appellate court's authority to preserve its jurisdiction, and it was "just relief" necessary to preserve the rights of the parties during the time the appellate court considered the case.[36] In a similar instance, our Court determined that an appellate court had the "discretion to remand the case" under Chapter 74 for the trial court's consideration of a thirty-day extension to cure a report found deficient on appeal.[37] Absent the exercise of such discretion, we held, a trial court that ruled that a report was sufficient arguably would have no opportunity to consider whether to permit an extension to cure its deficiencies after the appellate court reversed its ruling.[38] Similarly,

---

[35] Tex. R. App. P. 52.10(b).

[36] *See id.*; *see also* Tex. Gov't Code § 22.221(a) ("Each court of appeals or a justice of a court of appeals may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court.").

[37] *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008) (noting that the Legislature was presumably aware of interlocutory appeal statutes and intended its provisions and Chapter 74 to be interpreted together); *see also In re Tex. Educ. Agency*, 619 S.W.3d 679, 686–87 (Tex. 2021) (holding that statute precluding trial court counter-supersedeas orders in cases against state agencies did not limit appellate court's authority to issue appropriate temporary orders under Rule 29.3 where statute did not reflect an intent to limit appellate rights); Tex. R. App. P. 29.3 ("When an appeal from an interlocutory order is perfected, the appellate court may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security.").

[38] *Leland*, 257 S.W.3d at 208.

in this case, Smith invoked the appellate court's jurisdiction before the deadline for filing an expert report had passed, and he promptly sought a stay of proceedings.[39] Accordingly, we hold that the court of appeals acted within its discretion in staying the trial-court proceedings, including the expert-report deadline, while the case was pending in the appellate court.[40]

\* \* \*

Section 74.351(s) stays most discovery in health-care liability cases until the claimant serves an expert report. Although general operating policies can be relevant to a health-care liability claim, and thus discoverable during the ordinary course of the suit, a defendant must produce only that information particularly "related to the patient's health care" before the plaintiff serves an expert report. Because the trial court in this case acted within its discretion when it declined to compel the requested discovery, LCS is entitled to relief from the court of appeals' ruling to the contrary.

---

[39] To be afforded a stay, the party seeking relief must timely pursue its rights in both the trial court and the court of appeals. *See Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011) (plurality op.) (holding that to preserve opportunity to cure defective report, plaintiff must move to reconsider and cure deficiency with amended report after trial court rules report is deficient, denies opportunity to cure, and dismisses case; remanding in interest of justice to follow announced procedure). An appellate court may order the temporary relief necessary to preserve its jurisdiction or the parties' rights in connection with the pending appeal, including "just relief" in original proceedings under Rule 52.10(b).

[40] Because LCS has not moved to dismiss this case for lack of an expert report, we decline to further determine the effect of the appellate court's stay of proceedings.

We conditionally grant LCS's petition for writ of mandamus and direct the court of appeals to (1) vacate its order granting relief and (2) instruct the trial court to vacate the order it issued in compliance with the court of appeals' directive. We deny LCS's request for relief from the appellate court's stay of proceedings, and we lift our stay of proceedings.[41] We are confident the court of appeals will promptly comply; our writ will issue only if it does not.

Jane N. Bland
Justice

**OPINION DELIVERED:** February 25, 2022

---

[41] Order at 1, *In re LCS SP, LLC*, No. 20-0694 (Tex. Sept. 8, 2020).