**Opinion issued April 2, 2026**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-24-00849-CV**
_____

**JOHN S. BYNON M.D., Appellant**

**V.**

**SUSIE GARCIA, AS WRONGFUL DEATH BENEFICIARY OF RICHARD MOSTACCI, DECEASED; DIANELYS CORRALES, AS WRONGFUL DEATH BENEFICIARY OF DANIEL RODRIGUEZ ALVAREZ; ROBERT OSUNA, JR., AS WRONGFUL DEATH BENEFICIARY OF ROBERT OSUNA; LAURA WHITTINGTON, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF JERRY WHITTINGTON; NICOLE LLOYD; ELIA COMBS; MAXINE WHITTINGTON; EDEN WHITTINGTON; AND JOSEPH WHITTINGTON, Appellees**

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-26227**

**O P I N I O N**

This appeal involves the terms "health care liability claim," "answer," and "claimant." It arises in the context of an organ transplant program and the all-important waiting list. After a newspaper article accused a transplant surgeon of manipulating the list and depriving patients of lifesaving care, surviving relatives of his former patients went to court, but not for damages; they asked for injunctive relief to preserve evidence, while stopping short of requesting damages. Some intervenors later joined the suit.

The two sides disagree about whether expert reports were required. No reports were served, so if the law required them, the claims against the doctor must be dismissed with prejudice. The doctor's motion to dismiss was denied, and he appeals that denial. He contends that: (1) the case presents health care liability claims, (2) his brief in opposition to the request for an injunction counts as an answer, thus starting the clock for a report, and (3) the statutory definition of "claimant" reaches (a) the plaintiffs and (b) the intervenors, so they all come under the requirement that a claimant serve an expert report.

We agree with the doctor on several points. Specifically, we agree with him on contentions (1), (2), and (3)(b). First, the claims are health care liability claims. Second, the doctor filed an answer, even though he did not label it as an answer. Finally, the Texas Medical Liability Act (Civil Practice and Remedies Code Chapter

2

74) requires a report of a "claimant," which is carefully defined in terms of seeking damages: "'Claimant' means a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2). Hence, all who sought damages are claimants and must suffer dismissal; those who did not may proceed.

We affirm in part and reverse in part.

## BACKGROUND FACTS

*The plaintiffs sue for injunctive relief, but not damages*

An article in the New York Times reported that transplant surgeon Dr. John S. Bynon was under investigation for altering the transplant list at Memorial Hermann–Texas Medical Center and potentially denying his patients lifesaving care.

Susie Garcia, Dianelys Corrales, and Robert Osuna, Jr., surviving relatives of Bynon's former patients, thereafter sent Dr. Bynon statutory presuit notices of health care liability claims. *See id.* § 74.051(a). These notices reminded him of the obligation to preserve records that could be relevant to future litigation, and they sought to settle the controversy without the necessity of litigation. About a week later, they filed an application for a temporary restraining order and a temporary injunction.

The application for an injunction asserted that their loved ones—Richard Mostacci, Daniel Rodriguez Alvarez, and Robert Osuna—were put on an organ

3

transplant waiting list overseen by Dr. Bynon in 2021 or 2022. The plaintiffs alleged: "There is significant concern that [Dr. Bynon] was improperly excluding patients, including Mr. Mostacci, Mr. Rodriguez-Alvarez, and Mr. Osuna, from receiving a liver transplant and depriving them of lifesaving care." They alleged that their loved ones died in 2023 or 2024, sought preservation of evidence that "might be relevant to a potential claim that could be filed," and argued that imminent harm was the potential "destruction of relevant or material evidence and/or admissible evidence in future litigation related to this claim."

The remainder of the plaintiffs' pleading details the request for injunctive relief to preserve evidence. It contains counts for a temporary restraining order and for a temporary injunction, but no count for damages. It never refers to damages, interest on damages, or dollars.

*Dr. Bynon files an opposition to the request for injunctive relief*

Dr. Bynon promptly filed a "Brief in Opposition to Plaintiffs' Application for Temporary Restraining Order and Temporary Injunction." This document, which was filed in the trial court and served on counsel of record, identified the case, the cause number, and the parties. It was signed by Bynon's counsel and denied the factual allegations. It begins:

> John S. Bynon, M.D. is a transplant surgeon in Houston, where he is a
> Professor in the Department of Surgery at McGovern Medical School
> at UTHealth. Plaintiffs' Application for Temporary Restraining Order
> and Temporary Injunction ("Application") alleges, based on a New

4

York Times article alone, that Dr. Bynon "was improperly excluding patients, including Mr. Mostacci, Mr. Rodriguez Alvarez, and Mr. Osuna, from receiving a liver transplant and depriving them of lifesaving care." . . . *This allegation is false.*

. . . .

These accusations are based on hearsay upon hearsay, and there is no indication that these accusations are medically accurate, or whether the New York Times article is based on care rendered to the three patients that are the subject of this Application. . . .

(Emphasis added.)

Bynon also asserted that the plaintiffs did not identify a cause of action in their application, they did not plead and prove a probable right to the relief sought, and Susie Garcia's affidavit supporting the application did not demonstrate any basis for her personal knowledge of the facts asserted. Therefore, he argued, the request for injunctive relief was defective and without merit.

*Intervenors join the suit and seek damages*

Less than a week after Bynon responded to the plaintiffs' application, Laura Whittington, individually and as the representative of the estate of Jerry Whittington, Nicole Lloyd, Elia Combs, Maxine Whittington, Eden Whittington, and Joseph Whittington filed a petition in intervention.

The intervenors alleged that Jerry Whittington was placed on the same organ transplant list awaiting a liver transplant and that he died in September 2023. Unlike the plaintiffs, however, the intervenors expressly referred to damages: "Intervenors

seek injunctive relief as permitted by law. . . . This is a suit for all damages legally recoverable for the wrongful death of Jerry Whittington, under the terms of Section 71.001, et. seq., Civil Practice & Remedies Code."

*Plaintiffs amend but still do not seek damages*

The plaintiffs filed a First Amended Application for Temporary Restraining Order and Temporary Injunction. The only difference between this pleading and the original is in one sentence in paragraph 15. The original application asked broadly for preservation of documents, records, data, or "things that might be relevant to a potential claim that could be filed." The amended application changed the language to "things that might be relevant to a potential claim for personal injuries and/or wrongful death that could be filed."

*Bynon moves to dismiss*

Bynon moved to dismiss. He argued that the claims were health care liability claims, that he filed an answer, and that the case should be dismissed because neither the plaintiffs nor the intervenors served an expert report within 120 days of his answer. The plaintiffs and intervenors disagreed and argued, among other things, that they were not seeking damages and thus fell outside the definition of "claimant," which in turn would mean that no expert report was required. The trial court denied Bynon's motion to dismiss, and he appealed.

## ANALYSIS

We review a ruling on a motion to dismiss under Chapter 74 for an abuse of discretion. *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) (per curiam); *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 871 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). All agree that no expert report was filed, so our analysis does not address a report's adequacy, but rather whether a report was required at all. This question presents a matter of statutory construction, which we review de novo. *See Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023) (reviewing whether plaintiff asserted health care liability claim under de novo standard).

The statutory scheme contains two significant definitions.

*1. Health care liability claim.* Start with the definition of health care liability claim (HCLC). The Act defines HCLC as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

If a cause of action is an HCLC, any claimant must "serve one or more expert reports describing the applicable standards of care, how the defendant's conduct failed to meet those standards, and how those failures caused the claimant harm."

7

*Collin Creek*, 671 S.W.3d at 885 (citing TEX. CIV. PRAC. & REM. CODE § 74.351(a), (r)(6)). This requirement "enables trial courts to 'identify and eliminate frivolous [HCLC]s expeditiously, while preserving those of potential merit,' because any claim that constitutes an HCLC is subject to dismissal with prejudice if the claimant fails to produce a sufficient expert report within the statutorily imposed timeframe." *Leibman v. Waldroup*, 715 S.W.3d 367, 373–74 (Tex. 2025) (quoting *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (plurality op.), and citing TEX. CIV. PRAC. & REM. CODE § 74.351(a)–(c)).

*2. Claimant.* The definition of HCLC forms a subpart of the second definition in play, namely the definition of "claimant." The statutory predecessor to the Act defined HCLC by referencing an injury to "the patient," but when the Legislature enacted the Act in 2003, it added a definition for "claimant." *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 178 (Tex. 2012). The Act defines a claimant as a person "seeking or who has sought recovery of damages in a health care liability claim." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2).

Statutory definitions are binding on the courts: "[I]f a statute defines a term, a court is bound to construe that term by its statutory definition only." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002); *see Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024) (similar); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) ("We do not look to the

ordinary, or commonly understood, meaning of the term because the Legislature has supplied its own definition, which we are bound to follow.") (citing TEX. GOV'T CODE § 311.011(b)).

## I.    The plaintiffs and intervenors filed HCLCs.

Whether a claim is an HCLC depends on the underlying nature of the claim, rather than the label given by the plaintiff. *Collin Creek*, 671 S.W.3d at 885. As relevant to this case, an HCLC is a cause of action that "includes three essential elements: (1) the defendant is a physician . . . ; (2) the claim is for treatment, lack of treatment, or another departure from accepted standards of medical care . . . ; and (3) the defendant's act or omission proximately caused the claimant's injury or death." *Id.* at 886 (citing *Tex. W. Oaks Hosp.*, 371 S.W.3d at 179–80).

A cause of action is the fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief. *In re Jorden,* 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding) (quotation omitted). In addition, "claims premised on facts that *could* support claims against a physician . . . for departures from accepted standards of medical care [or] health care . . . are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *see In re Jorden*, 249 S.W.3d at 422 (concluding that petition for Rule 202 presuit deposition

was HCLC even though no claim had been filed against defendant asserting liability for injury).

Further, "artful pleading and recasting of claims is not permitted." *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010); *see CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016) (stating that when determining whether claim is HCLC, "we examine the underlying nature and gravamen of the claim, rather than the way it is pleaded"). "The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017).

We now turn to the question whether the three parts of the test for HCLC recited earlier—doctor, departure, and causation—have been met. The first element is plainly satisfied: Bynon is a medical doctor.

Second, the original application and the petition in intervention both alleged that Bynon was responsible for the liver transplant waiting list at Memorial Hermann–Texas Medical Center and that each of the appellees' decedents had, at one point, been placed on the list to receive an organ transplant. All alleged a "concern" that Bynon might have excluded their loved ones from the list improperly, thus depriving them of lifesaving care. All alleged that their loved ones, who had needed organ transplants, had died. This satisfies the second element of the test.

10

We acknowledge the appellees' contention to the contrary. They say that the claims are for preservation of evidence, not production of evidence, and thus do not require expert medical testimony. But the Texas Supreme Court has held that when a claim is premised on facts that *could* support claims against a physician for departures from accepted standards of medical care, the claim *is* an HCLC regardless of whether the plaintiff has actually alleged that the defendant is liable for a breach of those standards. *Loaisiga*, 379 S.W.3d at 255. In *Jorden*, the supreme court specifically held that a petition for a presuit deposition under Rule 202 was a HCLC. 249 S.W.3d at 422. We find that the nature of the claims at issue here satisfy the second element of the test.

The third and final element of the test is essentially undisputed. The plaintiffs and intervenors allege that Bynon's actions caused the death of their loved ones.

The fact that the claims came in an application for temporary injunction does not change our conclusion. The plaintiffs and intervenors sought injunctive relief to preserve evidence related to a potential departure from accepted standards of medical care. At the injunction hearing, the plaintiffs argued in favor of the issuance of an injunction, in part based on their pleading of a "potential claim." Thus, the facts regarding Bynon's alleged, potential departure from accepted standards of medical care are part of the cause of action pled. Although not identical to the Rule 202 setting in *Jorden*, this case seems analogous enough to that case to persuade us

11

that the pleadings implicate an HCLC. *See id.* We therefore conclude that the claims at issue qualify as HCLCs.

**II.    The "Brief in Opposition to Plaintiffs' Application for Temporary Restraining Order and Temporary Injunction" constituted an answer.**

The next part of the analysis asks whether Bynon filed an answer. This question arises because the Act requires a claimant to serve an expert report no later than 120 days after the defendant files an original answer. TEX. CIV. PRAC. & REM. CODE § 74.351(a).

According to Bynon, his "Brief in Opposition to Plaintiffs' Application for Temporary Restraining Order and Temporary Injunction" counts as an answer, which started the clock for an expert report. The plaintiffs and intervenors argue that his response to the application for injunctive relief was not an answer because the trial court did not view the application as an HCLC. We have already held that the application for injunctive relief states an HCLC.

The Rules of Civil Procedure generally govern the defendant's answer. *See* TEX. R. CIV. P. 83–85, 90, 92–98. One kind of answer is a general denial, *see* TEX. R. CIV. P. 92, but other possibilities exist. Consider Rule 84, which states that an answer may allege various "matters" in opposition to the lawsuit: "The defendant in his answer may plead as many several matters, whether of law or fact, as he may think necessary for his defense, and which may be pertinent to the cause, and such

12

matters shall be heard in such order as may be directed by the court . . . ." Tᴇx. R. Cɪv. P. 84.

Texas courts have held that informal responses from pro se defendants constituted pleadings sufficient to avoid the harsh consequences of default judgment. *E.g.*, *Smith v. Lippmann*, 826 S.W.2d 137, 138 (Tex. 1992) (per curiam). These courts have concluded that a responsive pleading may constitute an answer even if it does not comply with the Rules of Civil Procedure. *Id.*; *see Sells v. Drott*, 259 S.W.3d 156, 159 (Tex. 2008) (per curiam) (concluding that answer was sufficient despite extrinsic evidence raising question about whether adult daughter had signed answer for her mother); *Hale v. Off. of Att'y Gen. of Tex.*, No. 01-22-00111-CV, 2023 WL 2249200, at *3 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet.) (mem. op.) (summarizing cases in which courts have found that pro se defendants filed answers, when such answers were in form of letters that did not fully comply with Rules of Civil Procedure). For a filing to constitute an answer, it "must contain sufficient information to place in issue the claims made in the suit." *Guadalupe Econ. Servs. Corp. v. DeHoyos*, 183 S.W.3d 712, 716 (Tex. App.—Austin 2005, no pet.).

Bynon's brief in opposition to the plaintiffs' application for injunctive relief was not entitled "Answer" or "Original Answer." Even so, it identified the case and the parties, and it denied the factual allegations against Bynon—that he improperly

13

excluded patients from the organ transplant list, thus allegedly depriving them of lifesaving care—by quoting the language from the plaintiffs' application and stating, "This allegation is false."

It also pleaded specific denials relating to plaintiffs' request for injunctive relief, asserting that they did not show themselves entitled to it. It was signed by his attorney and served on all parties' counsel of record. At oral argument, appellees' counsel essentially agreed that it qualifies as an answer. We agree with Bynon that his brief in opposition to the injunction constituted an answer.

## III. Intervenors meet the definition of claimants, but the plaintiffs do not.

The last question involves the defined term "claimant." The Act defines a claimant as "a person . . . seeking or who has sought recovery of damages in a health care liability claim." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2). A claimant must serve an expert report within 120 days of the defendant filing an original answer. *Id.* § 74.351(a). Bynon says that the appellees are all claimants, but they disagree because they sought only injunctive relief and not damages.

The definition largely dictates the analysis. If the Act had not defined "claimant," we would have latitude to construe the term in a way that does not involve damages, but the Legislature supplied its own definition. We have no authority to rewrite that language. The statute as written speaks in terms of seeking the recovery of damages. Given the plain language of the statute, we agree with other

14

Texas courts that where a party seeks relief other than damages, he or she is not a claimant within the ambit of the statutory definition:

> Here, Sosa seeks declaratory relief; he does not seek to recover damages. Consequently, he is not a claimant within the meaning of the medical liability act, and he was not required to file the expert report required by § 74.351(a). *See McAllen Hosps., L.P. v. Gomez*, No. 13-12-00421-CV, 2013 WL 784688, at \*6 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, no pet.) (mem. op.) (concluding plaintiff, with respect to his claim seeking a declaration that a hospital lien was invalid, was not a "claimant" under TMLA because he sought "declaratory relief, not an award of damages"). Notably, this is not a case in which the plaintiff seeks damages *and also* seeks declaratory relief, which we previously concluded compels a different result than the one we reach today. *See Tinnard v. Dallas Cnty. Hosp. Dist.*, No. 05-13-01161-CV, 2015 WL 273123, at \*5 (Tex. App.—Dallas Jan. 22, 2015, no pet.) (mem. op.) (when plaintiff sued hea[l]th care providers under the tort claims act seeking actual, statutory, and punitive damages, he was a claimant seeking damages under the TMLA, and the "fact that [the plaintiff] also filed a claim for declaratory relief does not alter the underlying nature of his lawsuit, and his claim cannot be divided into both a health care liability claim and another type of claim"). Sosa seeks only a judicial declaration under Chapter 37 that the hospital lien allegedly authorized by Lopez and Humphrey is invalid, and he seeks attorney's fees under § 37.009—he does not seek to recover damages. *E.g., CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 05-15-00157-CV, 2017 WL 1455407, at \*15 (Tex. App.—Dallas Apr. 21, 2017, pet. denied) (mem. op.) ("attorney's fees are not ordinarily considered as an element of damages").

*Lopez v. Sosa*, No. 05-22-00295-CV, 2023 WL 3914553, at \*7 (Tex. App.—Dallas June 9, 2023, pet. denied) (mem. op.). Further, Texas courts have held that the State is not a "claimant" under the Act when suing a health care provider for imposition of statutory civil penalties because penalties are not damages. *State v. Emeritus Corp.*, 466 S.W.3d 233, 246–51 (Tex. App.—Corpus Christi–Edinburg 2015, pet.

15

denied); *see Nazari v. State*, 497 S.W.3d 169, 181 (Tex. App.—Austin 2016) (op. on reh'g) (discussing *Emeritus Corp.* and concluding that civil penalties sought by State did not qualify as "damages or monetary relief" and therefore health care providers' counterclaims against State were barred by sovereign immunity), *aff'd*, 561 S.W.3d 495 (Tex. 2018).

Here the intervenors explicitly described their lawsuit as a suit for damages: "This is a suit for all damages legally recoverable for the wrongful death of Jerry Whittington." Their lawsuit walks right into the definition of claimant by "seeking" to recover damages. Although their petition in intervention does not elaborate or include a stand-alone count for damages, that does not alter our conclusion. No further detail is necessary.

On the other hand, the application filed by the plaintiffs did nothing like this. Their application did not expressly refer to damages or even hint at seeking damages. Unless we are to rewrite the statutory definition in a way that courts should not do, we must conclude that the plaintiffs do not qualify as claimants.

At argument, we asked the parties to supply additional briefing on this issue. Both sides addressed *Lopez v. Sosa*, which we find persuasive and opt to follow here. Bynon expects to see a request for damages in the future; he reasons that otherwise, the pursuit of an injunction would amount to an empty exercise. But that is not an argument against *Lopez*. The pursuit of the injunction may or may not be empty, but

16

the remedy for a problematic injunction is to appeal it immediately, *see* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4), not to ask us to disregard the statutory text about who counts as a claimant. We will reverse a bad injunction because it is bad; we will not rewrite a statute just to overturn one injunction that might look anomalous.

## Conclusion

We affirm in part and reverse in part. Specifically, we reverse that part of the order that denied dismissal as to the intervenors, and we remand to the trial court for entry of judgment of dismissal and consideration of Bynon's request for attorney's fees in that regard. *See id.* § 74.351(b). We affirm as to the other appellees.


David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Dokupil.

Justice Dokupil, concurring and dissenting.